GEORGE J. MICHEL, Respondent, *v.* AMERICAN CENTRAL INSURANCE COMPANY, Appellant.

*Fire insurance— refusal of appraisers to act —refusal to consent to the appointment of others except on conditions — appraisers are not to construe the policy — when the word " other" covers only articles like those already described.*

Where, after a loss by fire, an arbitration as to the amount of the loss has been agreed upon, pursuant to a clause in the policy of insurance, and the appraisers, taking different views as to the proper construction of the policy and the property covered by it, are unable to agree, and the arbitrator refuses to act, it is not unreasonable for the insured to refuse to enter upon a second arbitration, proposed a month later by the insurer, unless the latter will consent to waive a condition in the policy that damages shall not become due until sixty days after notice of the amount awarded.

Under such circumstances the arbitration clause in the policy is no bar to the maintenance of an action by the insured to recover upon the policy.

The construction of an insurance policy, in the case of disagreement as to its meaning, is for the court, and it is no part of the duty of the appraiser for the insured to construe it.

Where a policy of fire insurance states that the insurance covers, among other property, certain machinery described specifically, "and other machinery and implements used in his (the insured's) business as a machinist," the words "used in his business as a machinist" will be held to qualify and control all preceding words in the sentence; and the word "other" to refer only to any machinery which is not different in kind from that described in the preceding words, and to be limited by the words "used in his business as a machinist," and not to cover articles carried in stock for sale.

APPEAL by the defendant, the American Central Insurance Company, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Monroe on the 12th day of October, 1896, for $1,670.59 damages and costs,

upon the report of a referee, separately stating the facts found and the conclusions of law.

This action was begun May 5, 1896, to recover damages caused by fire to plaintiff's personal property which, it is alleged, was insured by the defendant. Since February, 1892, the plaintiff has been engaged at Nos. 129 and 131 North Water street, Rochester, N. Y., in repairing and in manufacturing machinery for sale and in selling machinery purchased of others. Before February 18, 1892, he was engaged in the same kind of business for ten or eleven years at different numbers on the same street. The basement and second floor of Nos. 129 and 131 were occupied by plaintiff for repairing and manufacturing machinery, and he there had machinery and implements in use in his business as a machinist. The first floor of the building was used as a store where machinery manufactured by him and purchased by him was exposed for sale and sold. On the third and fourth floors machinery and other personal property appertaining to the business were stored. Such was the situation when the policy was executed and when the fire occurred.

October 29, 1895, the defendant, by a New York standard policy, insured the plaintiff against loss or damage by fire, for one year, in the sum of $1,400, distributed on property described in the policy as follows:

"1000 On machinery, shafting, belting, iron-working lathes, planers, upright drills, milling machinery and fixtures, and on other machinery and implements used in his business as a machinist.

"300 On wood and metal patterns.

"100 On office furniture and fixtures, desk, stoves, stationery and iron safe — all contained in the 4 story and basement brick building, situate Nos. 129 and 131 on the west side of North Water street, Rochester, N. Y.

"Other insurance permitted."

The policy contains clauses found in New York standard policies, of which the following are copies:

"In the event of disagreement as to the amount of loss the same shall, as above provided, be ascertained by two competent and disinterested appraisers, the insured and this company each selecting

one, and the two so chosen shall select a competent and disinterested umpire; the appraisers together shall then estimate and appraise the loss, stating separately sound value and damage, and, failing to agree, shall submit their differences to the umpire, and the award in writing of any two shall determine the amount of such loss; the parties thereto shall pay the appraiser, respectively, selected by them, and shall bear equally the expenses of the appraisal and umpire. * * * No suit or action on this policy, for the recovery of any claim, shall be sustainable in any court of law or equity until after full compliance by the insured with all the foregoing requirements, nor unless commenced within twelve months next after the fire."

The policy also provides that the damages, when ascertained by arbitration, shall be payable sixty days after notice thereof is given to the company.

January 4, 1896 (Saturday night), a fire occurred by which the plaintiff's machinery, tools, implements, wood and metal patterns used by him in his business as a machinist, his office furniture and fixtures, and also his machinery and tools in stock and kept for sale, were in part destroyed and in part damaged by fire.

Due notice was given by the plaintiff of the fire, and January 9, 1896, the litigants executed at Rochester an agreement to submit the question of the amount of damages occasioned by the fire to Edward R. Berry, of Penn Yan, chosen by the corporation, and William A. Wilson, of Rochester, chosen by the plaintiff. January 13, 1896, the two appraisers agreed upon Valentine Dengler, of Rochester, as umpire. The property to be appraised was described in the arbitration agreement by the same words as in the policy. The appraisers failed to agree, and upon calling for the arbitrator it was found that he went south January 13, 1896. He did not return from the south to Rochester until after the 20th of February, 1896.

February 8, 1896, the plaintiff verified proofs of loss, which were mailed to, and received by, the defendant February 10, 1896, by which the plaintiff claimed a loss on each of the three classes of property described in the policy in excess of the amounts insured on each class. It is conceded that these proofs were in due form and were objected to by the corporation only upon the ground that

the damages claimed were excessive, and that there was then an unexecuted agreement outstanding for determining damages by appraisal.

When the umpire returned to Rochester, about February 20, 1896, the appraisers called on him and the three went together to the plaintiff's place of business and found that the property damaged had been cleaned up and that there were then no traces of the extent of the damages claimed, and the umpire refused to act.

March 21, 1896, the defendant's general agent wrote the plaintiff that the appraisers having failed to agree, the corporation was ready to select new appraisers and execute a new appraisal agreement, to which the plaintiff replied March 24, 1896 : "I am ready if you will come at once. Bring your man with you, also an extra appraisal blank." March twenty-eighth the agent mailed to the plaintiff an appraisal blank to be filled and executed by him. The plaintiff replied March 31, 1896, declining to sign the agreement inclosed because it had not been signed by the corporation, and upon the further ground that if a new appraisal agreement was entered into the corporation must waive the provision in the policy that the damages should not become due until sixty days after notice of the amount awarded.

A second arbitration agreement was not entered into, and the damages have not been determined by arbitration. On the 5th of May, 1896, this action was begun.

*Walter S. Hubbell*, for the appellant.

*Patrick McIntyre*, for the respondent.

FOLLETT, J.:

But three questions relating to the right of recovery are involved in this litigation : (1) Whether the plaintiff has unreasonably refused to have the amount of damages determined by arbitration and can, under the provision quoted from the policy, maintain this action. (2) Whether the policy covers machinery, tools and implements carried in stock for sale. (3) Whether the damages awarded by the referee are excessive.

Under the policy and the arbitration agreement the arbitrators had no power to construe the policy and determine what property

was and what property was not insured; but it was their duty to ascertain the damages done by the destruction and injury of all the property of the kinds or classes described in the policy and specify that which was in use and that which was kept for sale, stating separately the damages sustained on each class of property. The construction of the policy, in case the parties could not agree, was for the courts and not for the arbitrators, unless the parties had chosen by agreement to submit that question to them, which was not done.

William A. Wilson, the appraiser selected by the plaintiff, testified: "I claimed that the whole machinery was covered by insurance; by the whole machinery I mean the machinery that was there and sold, as well as that used by him; that was the disagreement between Mr. Berry and me." He also testified, in effect, that the plaintiff knew and approved of the position he took.

Edward R. Berry, the appraiser selected by the corporation, testified: "He (Wilson) said he wouldn't go ahead with it unless we took the stock of machinery all under one item; that Mr. Michel and his attorney claimed the policy covered all there was in there." This was not disputed. He further testified: "I insisted in having two schedules made, one of the stock and one of the machinery." But he also testified that he supposed it was a part of his duty to construe the policy.

January 21, 1896, the defendant's general agent wrote the plaintiff that Mr. Edward R. Berry "is now prepared to go ahead with the appraisal of loss to your office in furniture, patterns, tools and machinery used in your business."

The referee did not find whether William A. Wilson, under the advice of the plaintiff or of his attorney, insisted on having all the property appraised without specifying that which was for sale and that which was in use. If Wilson, by the direction of the plaintiff or of his counsel, refused to go on with the arbitration unless all the property were appraised, including that in use and that for sale, without specifying the damage on each class of property, the refusal was unreasonable and sufficient to defeat an action on this policy.

But this question not having been passed on by the referee, the question whether the plaintiff unreasonably failed to comply with the arbitration clause must be spelled out from the evidence. Con-

sidering all the evidence bearing on this question, and in the absence of an express finding, it cannot be held on this appeal that the action was brought in violation of the arbitration clause. The defendant was guilty of delay in attempting to procure a second arbitration, and, considering this delay, it was not unreasonable for the plaintiff to take the position that he would not enter into a second arbitration unless it was stipulated that the payment of his damages should not be delayed for sixty days after the determination of new appraisers. I am of the opinion that the evidence relating to the first question involved does not require the court to hold, as a matter of law, that this action cannot be maintained.

Does the policy cover machinery, tools and implements carried in stock for sale?

The words "used in his business as a machinist" qualify and control all the preceding words in the same sentence. A "machinist" is a constructor of machines, or one skilled in their construction. (Worcester Dict.; Century Dict.) The word is not descriptive of a dealer in machinery and implements. "Shafting" and "belting" are specific words descriptive of machinery in use; so are "iron working lathes," "planers" and "upright drills." "Milling machinery," or a milling machine, is a machine used to cut metals. The plaintiff testified that he had such a machine in use. Every word preceding the words "and on other" accurately describes specific machinery in use in any fairly well-equipped machine shop, and are not apt words, or such as are generally used in policies to describe a stock of goods kept for sale. The word "other" means any machinery not different in kind from that before specified and kept in the building not for a different purpose, but for the same purpose — "used in his business as a machinist." "Other" is a word of addition which is very often used in fire insurance policies to cover articles of the same kind and not particularly described by the preceding words. In a statute or in a contract where general words follow specific words, the general words are not construed to mean things of a different kind from those described by the specific words, but they denote things of the same kind and for the same use. *Ejusdem generis.* If it be urged that there was property kept for sale corresponding with the specific words, the answer is that they were not "used in his business as a machinist."

Thus far I have construed the language used without reference to extraneous circumstances. It is not alleged that there is any mistake in the policy. October 29, 1888, the Rochester German Insurance Company issued a policy (Exhibit S) for the same amount, for one year, and the clause relating to machinery was precisely like the clause in question, except that the word "other" was not used. October 28, 1889, the same company issued a second policy (Exhibit T), using the same words as in the first. October 29, 1890 (Exhibit E), and October 28, 1891 (Exhibit F), the same company insured the same property for the same amount, and in both policies the words "and all other" are used, the description being the same except that the word "all" is not used in the policy in suit. March 11, 1892, the Ætna Insurance Company insured the plaintiff (Exhibit M) for $3,000 on property described as follows:

"$1,000 on his stock, manufactured and in process, and materials and supplies used in his business, to include work finished and in process.

"1,700 on his machinery, shafting, belting, iron-working lathes, planes, upright drills, milling machinery, tools and implements used in his business as machinist.

"300 on wood and metal patterns. All contained in the four-story and basement brick building situate Nos. 129 & 131 west side of North Water street, Rochester, N. Y.

"Other insurance permitted.

"And renewed to and include March 11th, 1895."

It will be observed that the first clause last quoted covers manufactured stock, materials and supplies, and the second clause covers machinery and implements "used in his business as machinist."

The plaintiff testified that he had in use machinery answering the description in the policy, and also that he had some machinery in stock corresponding with the description in the policy. Upon the face of the policy, read in the light of the surrounding circumstances, I think that only the machinery in use is covered by the clause under consideration.

The language used in the policy, read by itself or in the light of the surrounding circumstances, is not ambiguous, but is plain, and

admits of but one meaning, which is, that only machinery "used in his business as machinist" is covered. By no other construction can every word in the clause be given a meaning.

Exhibit E is a policy issued October 29, 1890, by the Rochester German Insurance Company to the plaintiff. Frederick Zimmer was the agent of that company and was also the agent who issued the policy in suit. The plaintiff, over the defendant's objection and exception, was permitted to testify that he pointed out to Zimmer his machinery "standing in stock" as part of the property to be covered by the policy to be issued by the Rochester German Insurance Company. This was error. Zimmer was not then acting as the agent of this defendant, but for a different corporation, and it was five years before the policy in suit was issued, and it does not appear that Zimmer was then an agent for the defendant. What occurred at that interview was not admissible as against this defendant.

It is to be regretted that the referee did not determine the amount of damages on each class of property so that the judgment could be modified, but, as the case stands, if these views prevail, the judgment must be reversed and a new trial granted, with costs to abide the event.

All concurred.

Judgment reversed and a new trial ordered, with costs to abide the event.