**UNITED STATES of America, Appellant,**

v.

**Russell R. GEORGE, aka Rusty, and Pamela A. Johnson–Sherman, Defendants,**

**Francis R. LaJoice, Defendant–Appellee.**

No. 767, Docket 91–1524.

United States Court of Appeals, Second Circuit.

Argued Jan. 17, 1992.

Decided Sept. 17, 1992.

John–Claude Charbonneau, Asst. U.S. Atty., Rutland, Vt. (Charles A. Caruso, U.S. Atty., Gary G. Shattuck, Asst. U.S. Atty., of counsel), for appellant.

Carolyn Browne Anderson, Rutland, Vt. (Abell, Kenlan, Schwiebert & Hall, P.C., of counsel), for defendant-appellee.

Before: VAN GRAAFEILAND and CARDAMONE, Circuit Judges, and STEWART, District Judge.*

CARDAMONE, Circuit Judge:

Because everyone has some kind of secret or other, most people are anxious that their personal privacy be respected. For that very human reason the general warrant, permitting police agents to ransack one's personal belongings, has long been considered abhorrent to fundamental notions of privacy and liberty. *See Go–Bart Importing Co. v. United States*, 282 U.S. 344, 357, 51 S.Ct. 153, 158, 75 L.Ed. 374 (1931). We have before us on this appeal a warrant that is, in part, so broad as to be a general warrant and which, as to that part, no reasonable police officer could suppose otherwise. Yet, we think the warrant in this particular case may be saved as an object in plain view under the doctrine of severance, which strikes that portion of the warrant that is constitutionally infirm and upholds the remainder. Our reasons follow.

## FACTS

Sometime just after midnight on April 18, 1989 at McDonald's restaurant in Manchester, Vermont, several people, including two managers of the restaurant, were victims of an armed robbery. The perpetrator, a blonde white male, said he had a gun and made a pointing gesture with it, as he ordered one of the victims, Dawn Wood, to throw the bags she had just placed in her car on the ground. Another manager of McDonald's exited the store at this time, and he too was told to throw down his bag. The robber picked up Ms. Wood's purse

and brief case, as well as the other manager's bag, and ran into a wooded area behind the restaurant. An investigation by the Manchester Police Department immediately after the robbery provided probable cause to believe evidence of the crime could be found at an apartment shared by defendants Russell George, Pamela Johnson–Sherman, and Francis LaJoice, the appellee.

The following day, April 19, Officer Brickell swore out an affidavit detailing the investigation, concluding:

> I believe the following itemscan [sic] be located at ... 30 Baxter St. in Rutland Vermont:
>> Burgundy Purse
>> Burgundy Shoulder bag
>> Credit Cards belonging to Dawn Wood
>> Personal Papers of Dawn Wood
>> I.D. of Dawn Wood
>> Misc. photos
>> Keys to Honda motorcycle
>> Dark attache case containing McDonalds management material
>> A McDonald's Uniform
>> Duffle Bag
>> Handgun
>> Workboot of similar design to plaster casts
>> *Other evidence relating to the commission of a crime*

(emphasis added). A Bennington County District Court Judge issued a warrant that day authorizing the search for and seizure of

> 1 Burgundy purse, 1 burgundy shoulder bag, credit cards, personal papers, and ID of Dawn Wood. Misc. photos, keys to Honda motorcycle, dark attache case containing McDonalds management material, McDonalds uniform Handgun, workboot of similar design to plaster cast, *any other evidence relating to the commission of a crime*

(emphasis added).

The warrant was executed during the afternoon of the same day by local and state police officers. Officer Brickell was

---

* Hon. Charles E. Stewart, United States Senior District Judge for the Southern District of New York, sitting by designation.

one of those officers. During the search the police seized four items: an Ithaca 12 gauge shotgun, boots, a clock and .22 ammunition. The 12 gauge shotgun served as the basis of a federal grand jury indictment on February 20, 1991 charging LaJoice with possession of a firearm by a felon, in violation of 18 U.S.C. §§ 922(g)(1) and 924(e)(1). The same indictment charged defendants George and Johnson–Sherman with this count, as well as controlled substance violations. These two defendants are not before us on this appeal.

On May 15, 1991 LaJoice moved to suppress all evidence seized during the search. On August 19 the United States District Court for the District of Vermont (Billings, C.J.) granted the motion, finding that the warrant failed to satisfy the particularity requirement of the Fourth Amendment and was so facially deficient the executing officers could not reasonably have relied upon it in "good faith." The United States appeals. Although we are in general agreement with the district court's conclusions, the plain view argument raised by the government that could justify admission of the shotgun was not reached or decided by the trial court. Hence, we remand.

## DISCUSSION

### I

#### A. *General Warrant*

■ The general warrant—authorizing police agents to undertake an indiscriminate rummaging through citizens' personal effects—is prohibited by the Fourth Amendment's command that "no Warrants shall issue [unless] particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend IV. *See Coolidge v. New Hampshire*, 403 U.S. 443, 467, 91 S.Ct. 2022, 2038, 29 L.Ed.2d 564 (1971) (plurality). In order to prevent a "wide-ranging exploratory search," *Maryland v. Garrison*, 480 U.S. 79, 84, 107 S.Ct. 1013, 1016, 94 L.Ed.2d 72 (1987), the warrant must enable the executing officer to ascertain and identify with reasonable certainty those items that the magistrate has authorized him to seize.

*See Steele v. United States*, 267 U.S. 498, 503, 45 S.Ct. 414, 416, 69 L.Ed. 757 (1925); *United States v. Vargas*, 621 F.2d 54, 56 (2d Cir.), *cert. denied*, 449 U.S. 854, 101 S.Ct. 150, 66 L.Ed.2d 68 (1980). Whether a warrant is sufficiently particular to pass constitutional scrutiny presents a question of law that we decide *de novo*. *See United States v. Harris*, 903 F.2d 770, 774 (10th Cir.1990); *United States v. Spilotro*, 800 F.2d 959, 963 (9th Cir.1986).

■ The instant warrant's broad authorization to search for "any other evidence relating to the commission of a crime" plainly is not sufficiently particular with respect to the things to be seized because it effectively granted the executing officers' "virtually unfettered discretion to seize anything they [saw]." *United States v. Mankani*, 738 F.2d 538, 546 (2d Cir.1984). The government attempts to blunt the implications of this indiscriminate warrant by urging that, read in context, the broad catch-all phrase refers only to evidence relating to the McDonald's robbery. It cites *Andresen v. Maryland*, 427 U.S. 463, 96 S.Ct. 2737, 49 L.Ed.2d 627 (1976), in support of this proposition. *Andresen* involved a fraud investigation concerning the sale of real estate (Lot 13T). The warrant authorized a search for items pertaining to the sale of Lot 13T, listed several categories and types of evidence separated by semicolons, and concluded with the phrase "together with other fruits, instrumentalities and evidence of crime at this [time] unknown." 427 U.S. at 480–81 n. 10, 96 S.Ct. at 2749 n. 10. In rejecting the argument that the clause "evidence of crime at this [time] unknown" transformed the warrant into a general warrant, the Supreme Court observed that as the preambulatory phrase "pertaining to [Lot 13T]" was followed by a colon and the following clauses were separated by semicolons, each clause was therefore logically limited to items pertaining to Lot 13T. *Id.* at 480–82, 96 S.Ct. at 2748–49. Thus, the catch-all phrase, read in context, authorized only a search for evidence relating to the crime of false pretenses with respect to Lot 13T.

The warrant in the instant case does not lend itself to such a limiting construction. Nothing on the face of the warrant tells the searching officers for what crime the search is being undertaken. *Compare, e.g., United States v. Washington,* 797 F.2d 1461, 1472 (9th Cir.1986) (search of "records" limited to evidence of "prostitution activity" prevents warrant from being overbroad); *United States v. Johnson,* 541 F.2d 1311, 1315 (8th Cir.1976) (per curiam) (in context, "paraphernalia" was limited to that relating to use of marijuana). Although we have upheld warrants authorizing the seizure of "evidence," "instrumentalities" or generic classes of items where a more precise description was not possible in the circumstances, the warrants in those cases identified a specific illegal activity to which the items related. *See United States v. Young,* 745 F.2d 733, 758 (2d Cir.1984) (possession with intent to distribute narcotic controlled substances), *cert. denied,* 470 U.S. 1084, 105 S.Ct. 1842, 85 L.Ed.2d 142 (1985); *Mankani,* 738 F.2d at 546 (importation and distribution of hashish); *United States v. Dunloy,* 584 F.2d 6, 8 (2d Cir.1978) (possession with intent to distribute narcotics); *United States v. Scharfman,* 448 F.2d 1352, 1353 n. 1 (2d Cir.1971) (theft of fur coats), *cert. denied,* 405 U.S. 919, 92 S.Ct. 944, 30 L.Ed.2d 789 (1972).

A failure to describe the items to be seized with as much particularity as the circumstances reasonably allow offends the Fourth Amendment because there is no assurance that the permitted invasion of a suspect's privacy and property are no more than absolutely necessary. *See Coolidge,* 403 U.S. at 467, 91 S.Ct. at 2038; *United States v. Cardwell,* 680 F.2d 75, 78 (9th Cir.1982); *United States v. Klein,* 565 F.2d 183, 186 (1st Cir.1977); *United States v. Marti,* 421 F.2d 1263, 1268 (2d Cir.1970). The particularity requirement prevents this sort of privacy invasion and reduces the breadth of the search to that which a detached and neutral magistrate has determined is supported by probable cause. *See Garrison,* 480 U.S. at 84, 107 S.Ct. at 1016; *Coolidge,* 403 U.S. at 467, 91 S.Ct. at 2038. Mere reference to "evidence" of a violation of a broad criminal statute or general criminal activity provides no readily ascertainable guidelines for the executing officers as to what items to seize. *See United States v. Maxwell,* 920 F.2d 1028, 1033 (D.C.Cir.1990) (wire fraud); *United States v. Holzman,* 871 F.2d 1496, 1509 (fraud) (9th Cir.1989); *United States v. Fuccillo,* 808 F.2d 173, 176–77 (1st Cir.) (stolen goods), *cert. denied,* 482 U.S. 905, 107 S.Ct. 2481, 96 L.Ed.2d 374 (1987); *Voss v. Bergsgaard,* 774 F.2d 402, 405 (10th Cir.1985) (conspiracy); *Cardwell,* 680 F.2d at 77 (tax evasion). Absent some limitation curtailing the officers' discretion when executing the warrant, the safeguard of having a magistrate determine the scope of the search is lost. As a consequence, authorization to search for "evidence of *a* crime," that is to say, any crime, is so broad as to constitute a general warrant.

■ The government nonetheless contends the warrant may be cured by reference to Officer Brickell's affidavit that makes it clear the crime was the McDonald's robbery. *See, e.g., Harris,* 903 F.2d at 775; *United States v. Johnson,* 690 F.2d 60, 64–65 (3d Cir.1982), *cert. denied,* 459 U.S. 1214, 103 S.Ct. 1212, 75 L.Ed.2d 450 (1983). Even assuming the affidavit makes clear that only evidence relating to the McDonald's robbery was to be seized, the government's argument must fail. A sufficiently specific affidavit will not itself cure an overbroad warrant. *See, e.g., Marti,* 421 F.2d at 1268. Resort to an affidavit to remedy a warrant's lack of particularity is only available when it is incorporated by reference in the warrant itself and attached to it. *See, e.g., Maxwell,* 920 F.2d at 1031; *Matter of Property Belonging to Talk of the Town Bookstore, Inc.,* 644 F.2d 1317, 1319 (9th Cir.1981). The recitation in the instant warrant that it is "issued upon the basis of an application and affidavit[ ] of" Patrolman Brickell does not direct the executing officers to refer to the affidavit for guidance concerning the scope of the search and hence does not amount to incorporation by reference.

### B. *Good–Faith Exception*

■ The government further asserts the 12–gauge shotgun should not have been suppressed because it was objectively reasonable for the police in conducting the search to rely on the warrant's authorization to seize any evidence relating to the commission of a crime, that is, the so-called "good faith" exception to the exclusionary rule. *See Washington*, 797 F.2d at 1473 (if part of warrant overbroad, inquiry is whether officers acted in objective good faith in relying on the invalid sections); *see also Massachusetts v. Sheppard*, 468 U.S. 981, 104 S.Ct. 3424, 82 L.Ed.2d 737 (1984). The burden is on the government to demonstrate the objective reasonableness of the officers' good faith reliance, *see United States v. Michaelian*, 803 F.2d 1042, 1048 (9th Cir.1986). The issue presents a legal question we also review *de novo*. *See United States v. Dozier*, 844 F.2d 701, 706 (9th Cir.), *cert. denied*, 488 U.S. 927, 109 S.Ct. 312, 102 L.Ed.2d 331 (1988); *United States v. Accardo*, 749 F.2d 1477, 1481 (11th Cir.), *cert. denied*, 474 U.S. 949, 106 S.Ct. 314, 88 L.Ed.2d 295 (1985).

In *United States v. Leon*, 468 U.S. 897, 919–21, 104 S.Ct. 3405, 3418–19, 82 L.Ed.2d 677 (1984), the Supreme Court stated that the exclusionary rule did not apply to evidence seized in objectively reasonable reliance on a warrant subsequently declared invalid. Reasonable reliance does not allow an officer to conduct a search with complete disregard of the warrant's validity because the "standard of reasonableness ... is an objective one, ... [one that] requires officers to have a reasonable knowledge of what the law prohibits." *Id.* at 919–20 n. 20, 104 S.Ct. at 3418 n. 20. Accordingly, the Court recognized that in some circumstances "a warrant may be so facially deficient—*i.e.*, in failing to particularize the place to be searched or the things to be seized—that the executing officer cannot reasonably presume it to be valid." *Id.* at 923, 104 S.Ct. at 3421. Such is the case here.

■ As the above discussion demonstrates, it is obvious that a general warrant authorizing the seizure of "evidence" without mentioning a particular crime or criminal activity to which the evidence must relate is void under the Fourth Amendment. *See Spilotro*, 800 F.2d at 968 (where only limit on scope of search is that items to be seized be evidence of violation of any one of 13 federal statutes, some of exceptional scope, warrant so facially deficient that *Leon* not applicable); *United States v. Leary*, 846 F.2d 592, 606–10 (10th Cir.1988) (absent some other limiting feature, reference in warrant to statute covering broad range of activity facially deficient and *Leon* inapplicable); *see also Dozier*, 844 F.2d at 708; *Fuccillo*, 808 F.2d at 178; *Washington*, 797 F.2d at 1473; *United States v. Crozier*, 777 F.2d 1376, 1381 (9th Cir.1985). Since it was quite clear when this warrant was executed that "limits" to a search consisting only of a broad criminal statute were invalid, *a fortiori*, a warrant not limited in scope to *any crime at all* is so unconstitutionally broad that no reasonably well-trained police officer could believe otherwise.

In *United States v. Buck*, 813 F.2d 588 (2d Cir.), *cert. denied*, 484 U.S. 857, 108 S.Ct. 167, 98 L.Ed.2d 121 (1987), we struck down a warrant authorizing the seizure of "any papers, things or property of any kind relating to" the crime under investigation. Nonetheless, in light of *Young* and *Dunloy*—that upheld warrants using boilerplate language preceded by a list of specific items—we concluded *Leon* applied because the officers could not be expected to anticipate the invalidation of a warrant using only a catch-all phrase unaccompanied by any other limiting language, an unsettled question "going far beyond the ambiguity inherent in every new application of the law." *See id.* at 592–93. We cautioned that "with respect to searches conducted hereafter, police officers may no longer invoke the reasonable-reliance exception to the exclusionary rule when they attempt to introduce as evidence the fruits of searches undertaken on the basis of warrants containing only a catch-all description of the property to be seized." *Id.* at 593 n. 2.

Although the warrant here does not contain "only" a catch-all description of the

property to be seized, the portion under which admission of the shotgun is sought is tantamount to that for Fourth Amendment particularity purposes because it is not tied to the remainder of the warrant and hence, with respect to the scope of the search authorized by the catch-all clause, it stands alone. In other words, the "evidence" for which the officers were to search under the catch-all clause is not limited either to a generic classification, e.g., records or documents, *see United States v. Riley,* 906 F.2d 841, 844 (2d Cir.1990), or, even more egregiously, to a particular crime. While in certain contexts it might be questionable whether a catch-all clause is limited either to the type of evidence or the crime, nothing in this warrant supports such a construction and, therefore, no reasonable officer could think the clause was valid because it was so narrowed. *Cf. United States v. Strand,* 761 F.2d 449, 456–57 (8th Cir.1985) (no reasonable basis for officers to believe warrant authorizing seizure of "stolen mail" allowed seizure of ordinary household items).

The subject warrant is unconstitutionally overbroad and, unlike the situation in *Buck,* in light of the settled nature of the law concerning the failure for lack of particularity of warrants authorizing the search for "evidence" limited only by reference to "a crime," it is the type of facially invalid warrant that could not have been relied upon in good faith because "one who simply looked at the warrant, ... would ... suspect it was invalid." *United States v. Gordon,* 901 F.2d 48, 50 (5th Cir.), *cert. denied,* —— U.S. ——, 111 S.Ct. 510, 112 L.Ed.2d 522 (1990). *See Leary,* 846 F.2d at 609 (reasonably well-trained officer should know a warrant must provide guidelines for determining what evidence may be seized); *see also United States v. One Parcel of Property,* 774 F.Supp. 699, 707 (D.Conn.1991) (post-*Buck, Leon* inapplicable to warrant utilizing merely a catch-all description of property to be seized). Accordingly, the *Leon* good faith exception to the exclusionary rule will not serve to make the shotgun found in LaJoice's apartment available as evidence, that is, to avoid its suppression.

## II

### A. *Seizure Under "Plain View" Doctrine*

■ The government next declares the shotgun is admissible under the "plain view" exception to the warrant requirement. The plain view doctrine enables an officer to seize evidence without a warrant when it is immediately apparent that the object is connected with criminal activity, *see Texas v. Brown,* 460 U.S. 730, 742–43, 103 S.Ct. 1535, 1543, 75 L.Ed.2d 502 (1983) (plurality); *Warden v. Hayden,* 387 U.S. 294, 306–07, 87 S.Ct. 1642, 1650, 18 L.Ed.2d 782 (1967), and where such search and seizure do not involve an invasion of privacy. If the officers have not violated the Fourth Amendment in arriving at the place from where they can see an object in "plain view" the search implicates no constitutionally-protected privacy interest. *See Horton v. California,* 496 U.S. 128, 133–37, 110 S.Ct. 2301, 2305–08, 110 L.Ed.2d 112 (1990); *cf. Arizona v. Hicks,* 480 U.S. 321, 328, 107 S.Ct. 1149, 1154, 94 L.Ed.2d 347 (1987) (merely viewing an object is not a "search" within the meaning of the Fourth Amendment). Thus, an essential predicate of the plain view doctrine is that the initial intrusion not violate the Fourth Amendment. *See Horton,* 496 U.S. at 136, 110 S.Ct. at 2307; *Brown,* 460 U.S. at 738, 103 S.Ct. at 1541; *Coolidge,* 403 U.S. at 466, 91 S.Ct. at 2038.

The government suggests we sever the unconstitutional portion of the warrant and, as it believes the remainder satisfies the Fourth Amendment, rule that the police were therefore lawfully on the premises when they came upon the shotgun in plain view. *See Coolidge,* 403 U.S. at 465, 91 S.Ct. at 2037 (plain view applies where police have warrant to search a given area for specified objects and in course of search come across other incriminating articles).

■ As a preliminary matter, appellee asserts that since the government did not make this argument in the trial court, it cannot do so on appeal. Although the gov-

ernment's memorandum of law in opposition to defendant's suppression motion focused on the *Leon* good faith exception, at oral argument the government stated that "the seizure of these particular items is a plain view seizure." It seems apparent therefore that the United States did present a plain view justification for the seizure of the shotgun to the district court. In fact, that court's opinion, after concluding the good faith exception was inapplicable, recognized that "[t]he government additionally argues that the shotgun [was] seized pursuant to the plain view exception." Thus, we may consider this argument on appeal.

When a warrant is severed (or redacted) the constitutionally infirm portion—usually for lack of particularity or probable cause—is separated from the remainder and evidence seized pursuant to that portion is suppressed; evidence seized under the valid portion may be admitted. *See, e.g., United States v. Riggs*, 690 F.2d 298, 300 (1st Cir.1982); *United States v. Christine*, 687 F.2d 749, 754 (3d Cir.1982); *United States v. Cook*, 657 F.2d 730, 735 (5th Cir.1981). This notion that a search conducted pursuant to a warrant held unconstitutional in part does not invalidate the entire search is signalled in cases stating that only those items seized beyond the warrant's scope must be suppressed. *See, e.g., In Re Search Warrant Dated July 4, 1977*, 667 F.2d 117, 130–31 (D.C.Cir.1981), *cert. denied, Founding Church of Scientology v. United States*, 456 U.S. 926, 102 S.Ct. 1971, 72 L.Ed.2d 441 (1982); *Crozier*, 777 F.2d at 1381; *United States v. Wuagneux*, 683 F.2d 1343, 1354 (11th Cir.1982), *cert. denied*, 464 U.S. 814, 104 S.Ct. 69, 78 L.Ed.2d 83 (1983). While never explicitly considering the appropriateness of severance, as such, we have long accepted the underpinning of that doctrine, noting that "the remedy with respect to any items exceeding the scope of the warrant [is not] invalidation of the search but suppression of those items." *Dunloy*, 584 F.2d at 11 n. 4. *See also United States v. Matias*, 836 F.2d 744, 747 (2d Cir.1988); *United States v. Artieri*, 491 F.2d 440, 445–46 (2d Cir.), *cert. denied, Gonzales v. United States*,

417 U.S. 949, 94 S.Ct. 3076, 41 L.Ed.2d 670 *and cert. denied*, 419 U.S. 878, 95 S.Ct. 142, 42 L.Ed.2d 118 (1974).

We recognize that the social gains of deterring unconstitutional police conduct by suppressing *all* evidence seized pursuant to a partially invalid warrant often are outweighed by the social costs occasioned by such an across the board ruling. Fourth Amendment guarantees are adequately protected by suppressing only those items whose seizure is justified solely on the basis of the constitutionally infirm portion of the warrant, which no reasonably well-trained officer could presume to be valid. *See, e.g., Christine*, 687 F.2d at 756–60; *Riggs*, 690 F.2d at 301. *See also* 2 W. LaFave, *Search and Seizure* § 4.6(f) (2d ed. 1987) (supporting principle of severance).

Since the fruits of a search generally are not all suppressed merely because some of the evidence was seized pursuant to the invalid portion of a warrant, it follows the warrant as a whole is not invalid—that is, a redacted warrant may justify a police intrusion, satisfying in this fashion this crucial element of the plain view doctrine. *See Holzman*, 871 F.2d at 1512; *United States v. Fitzgerald*, 724 F.2d 633, 636–37 (8th Cir.1983) (en banc), *cert. denied*, 466 U.S. 950, 104 S.Ct. 2151, 80 L.Ed.2d 538 (1984); *United States v. Freeman*, 685 F.2d 942, 953 (5th Cir.1982). *Cf. Andresen*, 427 U.S. at 482 n. 11, 96 S.Ct. at 2749 n. 11 (to the extent items "were not within the scope of the warrants *or were otherwise improperly seized*," the trial court was correct in suppressing them) (emphasis added). We thus hold that a warrant may in appropriate cases be severed, thereby justifying the officers' presence in executing those portions of the warrant sufficiently particularized as to the items seized.

B. *"Plain View" Seizure in This Case*

That severance may be appropriate in theory does not mean it is appropriate in a particular case. The doctrine is not available where no part of the warrant is suffi-

ciently particularized, *see Cardwell,* 680 F.2d at 78; *cf. United States v. Gardner,* 537 F.2d 861, 862 (6th Cir.1976) (per curiam), where no portion of the warrant may be meaningfully severed, *see Christine,* 687 F.2d at 754, or where the sufficiently particularized portions make up only an insignificant or tangential part of the warrant. *See Spilotro,* 800 F.2d at 967–68; *Freeman,* 685 F.2d at 952. The district court granted suppression concluding that the warrant was a general warrant and that the *Leon* good faith exception did not save it. For that reason, it did not reach or decide the plain view argument or make a determination as to whether the subject warrant may be severed. Hence, the case must be remanded to enable the district court to rule on these issues.

We emphasize most strongly the circumscribed availability of the plain view doctrine in the case of a redacted warrant. Plain view only justifies the warrantless seizure of evidence because "by hypothesis the seizure of an [incriminating] object in plain view does not involve an intrusion on privacy." *Horton,* 496 U.S. at 141, 110 S.Ct. at 2310. The doctrine may not be used to extend a general exploratory search from one object to another until an incriminating item turns up. *See Coolidge,* 403 U.S. at 466, 91 S.Ct. at 2038; *Leon,* 468 U.S. at 918 n. 19, 104 S.Ct. at 3418 n. 19; *Brown,* 460 U.S. at 748–49, 103 S.Ct. at 1546–47. *See also, e.g., United States v. Medlin,* 842 F.2d 1194, 1199 (10th Cir.1988) (when officers *grossly* exceed scope of warrant the particularity requirement is undermined and suppression of *all* evidence is required).

In determining whether that doctrine applies in the case of a redacted warrant the trial court must therefore ask if, when the officers came upon the item found in plain view, they were in a place where the *redacted* warrant—or a provision of the original warrant as to which the good faith exception applies—authorized them to be. *See Fitzgerald,* 724 F.2d at 637; *Freeman,* 685 F.2d at 953. And because the scope of a search is limited to the lawful authority granted by the warrant, *see Bivens v. Six Unknown Federal Narcotics Agents,* 403 U.S. 388, 394 n. 7, 91 S.Ct. 1999, 2003 n. 7,

29 L.Ed.2d 619 (1971); *Matias,* 836 F.2d at 747, the item seized must have been discovered before the authority of the officers' to be on the premises has expired. *See Horton,* 496 U.S. at 140–41, 110 S.Ct. at 2310; *United States v. LeBron,* 729 F.2d 533, 537–38 & n. 3 (8th Cir.1984); *Freeman,* 685 F.2d at 953 n. 6. *See also Hicks,* 480 U.S. at 325 (taking action unrelated to the objectives of the authorized intrusion produces a new invasion of privacy).

## CONCLUSION

Accordingly, the district court's order granting appellee's motion to suppress is remanded for further findings in accordance with this opinion and a determination as to whether the shotgun is admissible as an object seized in plain view.

VAN GRAAFEILAND, Circuit Judge, concurring in result:

I concur in the majority's decision to vacate and remand but arrive at that decision by a slightly different route than do my colleagues.

Shortly after midnight on April 18, 1989, three employees of McDonald's restaurant in Manchester, Vermont, were robbed at gunpoint as they left their place of employment. Among the items taken were Dawn Wood's burgundy purse, burgundy shoulder bag, credit cards, personal papers, I.D. and miscellaneous photographs, keys to a Honda motorcycle, a dark attache case containing McDonald's management material, a McDonald's uniform, and a duffle bag.

Patrolman Christopher Brickell and Corporal Michael Hall of the Manchester Police Department were among the law enforcement agents called to the scene. During the immediate investigation, Brickell discovered LaJoice, two men, and a woman, all of whom had prior criminal convictions, loitering in a parking lot a short distance from McDonald's. No arrests were made at the time. The police were able, however, to make a plaster impression of a footprint on what appeared to be the robber's escape route.

On the following day, Officer Brickell secured the search warrant at issue herein from Vermont District Judge Theodore

Mandeville; and Brickell and Hall, who were continuing their investigation of the previous day's crime, promptly conducted the authorized search. This continuity of investigative effort is a clear indication of what the two officers were looking for, *i.e.*, evidence relating to the commission of the robbery at McDonald's. *See Massachusetts v. Sheppard*, 468 U.S. 981, 989 n. 6, 104 S.Ct. 3424, 3427 n. 6, 82 L.Ed.2d 737 (1984); *United States v. Maxwell*, 920 F.2d 1028, 1034 (D.C.Cir.1990); *United States v. Anderson*, 851 F.2d 384, 389 (D.C.Cir.1988), *cert. denied*, 488 U.S. 1012, 109 S.Ct. 801, 102 L.Ed.2d 792 (1989); *see also United States v. Gordon*, 901 F.2d 48, 50 (5th Cir.), *cert. denied*, —— U.S. ——, 111 S.Ct. 510, 112 L.Ed.2d 522 (1990).

The officers knew that Dawn Wood's burgundy purse and the other items listed in the search warrant constituted evidence relating to the commission of the crime they were investigating. No objectively reasonable person in their position would have believed that he was authorized to search for evidence of any crime other than the one that happened the previous day and that he was in the process of investigating, or that the phrase "Other evidence relating to the commission of a crime," which followed the list of items taken, the plaster cast and the gun, meant that they could search for evidence of any crime. *See United States v. Leon*, 468 U.S. 897, 919–20, 104 S.Ct. 3405, 3419, 82 L.Ed.2d 677 (1984). "Following an enumeration of particular classes 'other' must be read as 'other such like,' and includes only others of like kind and character." *Black's Law Dictionary* 1253 (rev'd 4th ed.). "Other" is a word of addition often used to cover articles of the same kind that are not specifically described by preceding words. *See Michel v. American Central Ins. Co.*, 17 A.D. 87, 92, 44 N.Y.S. 832 (1897). This phraseological use of the word "other" has been adopted in a number of search warrant cases. *See, e.g., Andresen v. Maryland*, 427 U.S. 463, 479–82, 96 S.Ct. 2737, 49 L.Ed.2d 627 (1976); *United States v. Riley*, 906 F.2d 841, 844–45 (2d Cir.1990); *United States v. Young*, 745 F.2d 733, 759–60 (2d Cir.1984), *cert. denied*, 470 U.S. 1084, 105 S.Ct. 1842, 85 L.Ed.2d 142 (1985);

*United States v. Mankani*, 738 F.2d 538, 546 (2d Cir.1984). Because all of the items listed in the warrant related only to the April 18th crime, the instant case is a particularly appropriate one for its use.

In sum, I believe that my colleagues' reading of the warrant at issue is "hypertechnical", *see United States v. Bithoney*, 631 F.2d 1, 3 (1st Cir.1980), *cert. denied*, 449 U.S. 1083, 101 S.Ct. 869, 66 L.Ed.2d 808 (1981). Consistent with former Justice Goldberg's admonition in *United States v. Ventresca*, 380 U.S. 102, 108, 85 S.Ct. 741, 746, 13 L.Ed.2d 684 (1965), that "[a] grudging or negative attitude by reviewing courts toward warrants will tend to discourage police officers from submitting their evidence to a judicial officer before acting," I think it important to state my conviction.