107 F.3d 5
 NOTICE: THIS SUMMARY ORDER MAY NOT BE CITED AS PRECEDENTIAL AUTHORITY, BUT MAY BE CALLED TO THE ATTENTION OF THE COURT IN A SUBSEQUENT STAGE OF THIS CASE, IN A RELATED CASE, OR IN ANY CASE FOR PURPOSES OF COLLATERAL ESTOPPEL OR RES JUDICATA. SEE SECOND CIRCUIT RULE 0.23.
UNITED STATES of America, Appellee,
v.
Robert SHAPIRO, aka "Robert Krimins," aka "Ted Ely," aka
Robert Weldon, aka Bob Cremins, aka Robert Gurian,
aka William Thomas Stovers, aka Robert
Bullis, aka James Nally,
Defendant-Appellant.
 No. 96-1247.
 United States Court of Appeals, Second Circuit.
 Jan. 30, 1997.
 
 APPEARING FOR APPELLANT: Christine Yaris, New York, NY.
 APPEARING FOR APPELLEE: Michele R.M. Campbell, Assistant United States Attorney, Eastern District of New York.
 Present: VAN GRAAFEILAND, LEVAL, and CABRANES, Circuit Judges.
 
 SUMMARY ORDER
 
 1
 This cause came on to be heard on the transcript of record from the United States District Court for the Eastern District of New York and was argued by counsel.
 
 
 2
 ON CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED AND DECREED that the judgment of the District Court be and it hereby is
 
 
 3
 AFFIRMED.
 
 
 4
 Robert Shapiro appeals from the judgment of conviction and sentence imposed after a jury convicted him of violating 18 U.S.C. §§ 1343 (wire fraud), 2113(c) (possession of property stolen from a bank) and 2315 (sale of stolen property). The district court departed upward from the applicable sentencing guidelines range and imposed a sentence of fifteen years on the wire-fraud count to run concurrent with an effective sentence of fifteen years on the remaining counts.
 
 
 5
 The evidence at trial revealed that between September 3 and September 7, 1993, Shapiro, using various aliases, fraudulently obtained approximately $200,000 worth of computer components from two companies by placing rush orders over the telephone and promising to pay with a cashier's check on delivery. The checks Shapiro used to pay for the orders were worthless; they were two of approximately 400 that were stolen from the Carteret Savings Bank in Longwood, Florida, on April 11, 1988. After obtaining the first shipment, Shapiro sold the components to a computer supply store in New York.
 
 
 6
 On appeal, Shapiro argues through counsel that the conviction must be set aside because the district court erred in denying a motion to suppress evidence and in allowing prejudicial testimony into evidence. In the alternative, Shapiro argues that his sentence on the wire-fraud count exceeded the five-year statutory maximum. Shapiro also has submitted a supplemental pro se brief addressing additional matters.
 
 
 7
 Shapiro first argues that evidence of the fraudulent scheme seized from his storage locker in New Jersey should have been suppressed because the search warrant was not sufficiently particularized. See generally Marron v. United States, 275 U.S. 192, 196 (1927). While the phrase "documents and records" certainly is broad in scope, "we have upheld warrants authorizing the seizure of ... generic classes of items where a more precise description was not possible in the circumstances [and] the warrants ... identified a specific illegal activity to which the items related." United States v. George, 975 F.2d 72, 76 (2d Cir.1992); see also United States v. Buck, 813 F.2d 588, 590 (2d Cir.), cert. denied, 484 U.S. 857 (1987). The warrant was restricted on its face to evidence of violations of 18 U.S.C. §§ 1344 & 2314, and therefore provided "some limitation curtailing the officers' discretion when executing the warrant." George, supra, 975 F.2d at 76. Moreover, the agent who prepared the more detailed affidavit also participated in the search. See United States v. Bianco, 998 F.2d 1112, 1116-17 (2d Cir.1993), cert. denied, 114 S.Ct. 1644 (1994). Finally, we note that search was limited to a specific storage locker at which the agents had probable cause to believe Shapiro had stashed evidence; thus the scope of the warrant was restricted further by the very nature of the search. See United States v. Dunloy, 584 F.2d 6, 10-11 (2d Cir.1978) (holding that "breadth of the warrant's language was tempered by the extremely confined area authorized to be searched").
 
 
 8
 Shapiro next argues that the district court erroneously admitted evidence of Shapiro's use of a purloined Carteret check in 1988 to pay for clothing. Shapiro's possession of a stolen check in close temporal proximity to the theft from Carteret was relevant to Shapiro's knowledge that the Carteret checks were stolen. See United States v. Jacobs, 475 F.2d 270, 280 (2d Cir.) ("[p]ossession of the fruits of crime, recently after its commission, justifies the inference that the possession is guilty possession"), cert. denied, 414 U.S. 821 (1973). As Shapiro's knowledge that the checks were stolen was directly relevant to the crimes charged, the evidence was admissible pursuant to Fed.R.Evid. 404(b). The district court's balancing of any unfairly prejudicial effect of the evidence against its probative value was not an abuse of discretion. See Huddleston v. United States, 485 U.S. 681, 691-92 (1988).
 
 
 9
 Next, Shapiro contends that the maximum sentence he faced on the wire-fraud count was only five years and not, as the district court held, thirty years. Section 1343 provides an enhanced penalty of thirty years "[i]f the violation affects a financial institution." Shapiro quite correctly points out that the Carteret Savings Bank failed long before he embarked on his fraudulent scheme, and therefore nothing he did could affect it. The government, however, argues that Carteret's successor, the Carteret Federal Savings Bank, surely was affected by Shapiro's use of the stolen checks. Shapiro's retort is not without force: since the original Carteret stopped payment on the stolen checks, it simply was impossible for the use of the checks to affect the bank.
 
 
 10
 We find it unnecessary in this case to draw the line at which point a financial institution is affected within the meaning of § 1343. The district court sentenced Shapiro to an effectively concurrent term of fifteen years on the second and third counts of conviction. Thus, even if we were to agree with Shapiro and hold that he was subject only to § 1343's alternate five-year maximum sentence, the fifteen year sentence imposed by the district court would stand. Because Shapiro's § 1343 conviction is valid and his overall sentence would remain unchanged regardless of whether the maximum permissible sentence on that count is five or thirty years, he suffers no adverse consequences from leaving undisturbed the fifteen-year sentence on that count. We therefore affirm his conviction without reaching the question of whether Shapiro's conduct affected a financial institution. Cf. United States v. Vargas, 615 F.2d 952, 956, 960 (2d Cir.1980) (Appellate court may decline to review "a conviction for which an appellant's sentence runs concurrently with that for another, valid conviction" where the government demonstrates that the "risk of collateral consequence is too slight to justify review.").
 
 
 11
 Shapiro raises a number of issues in his supplemental pro se brief. We have considered each of his arguments and find them to be without merit.