*United States v. Santos*

## UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

## <u>SUMMARY ORDER</u>

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of The United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 27th day of August, two thousand twenty-five.

PRESENT:

> BARRINGTON D. PARKER,
> BETH ROBINSON,
> MYRNA PÉREZ,
> > *Circuit Judges.*

_____

UNITED STATES OF AMERICA,

> *Appellant,*

> v.                 No. 24-2301

TYRONE SANTOS,

> *Defendant-Appellee.*

_____

FOR APPELLANT:                              AMANDA SHAMI (Amu Busa, Assistant
                                            United States Attorney, *on the briefs*),
                                            Assistant United States Attorney, *for*
                                            Breon Peace and John J. Durham, United
                                            States Attorneys for the Eastern District
                                            of New York, Brooklyn, NY.

FOR APPELLEE:                               MATTHEW B. LARSEN, Assistant Federal
                                            Defender, Federal Defenders of New
                                            York, Appeals Bureau, New York, NY.

Appeal from an interlocutory order of the United States District Court for the Eastern District of New York (Merchant, *Judge*).

**UPON DUE CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the order entered on July 29, 2024, is **VACATED**, and the case is **REMANDED** for further proceedings consistent with this order**.**

The government appeals a July 2024 interlocutory order partially granting Defendant-Appellee Tyrone Santos's motion to suppress evidence. We assume the parties' familiarity with the underlying facts, procedural history, and arguments on appeal, to which we refer only as necessary to explain our decision to vacate.

Santos allegedly stole relay box keys, also known as "arrow keys,"[1] from United States Postal Service ("USPS") carriers in Brooklyn, once on September 30, 2023, and again on October 14 of that year. Based on a victim's identification of him, he was arrested and indicted on four counts related to the robberies.

Several days later, the government sought a warrant to search Santos's smartphone, which had been seized during his arrest at his sister's home where Santos resided at the time. The accompanying affidavit by a postal inspector included a video still from surveillance footage of the perpetrator, showing him on his phone roughly two hours prior to the first robbery. The inspector stated that "the cellular phone device recovered from the search of his residence from the couch where he slept and that [Santos's] sister confirmed belonged to him . . . matche[d] the appearance of the phone seen on the surveillance footage." App'x 34 ¶ 25.

The postal inspector also stated:

> [F]rom my training and experience, I know that arrow keys are valuable to criminals, who counterfeit, sell, and/or use them directly to steal mail from relay boxes, which may at times contain cash, checks, gift cards, credit

---

[1] Arrow keys are universal keys used by USPS to access relay boxes that "may contain hundreds of mail items." App'x 9 ¶¶ 3–4. These mail items "can . . . be of direct value to anyone who steals them" and can include "cash, checks, gift cards, credit cards, documents that contain personal identification information, and official forms of identification." *Id.* ¶ 3.

cards, documents that contain personal identification information, and official forms of identification. I also know from my training and experience that criminals rely on cellular telephone devices to arrange for the counterfeiting, sale, and use of arrow keys, whether to communicate with counterfeiters, other criminals, or to surveil when relay boxes can be targeted.

. . . [N]eighborhood surveillance shows SANTOS using his cellular telephone device—the SUBJECT DEVICE— shortly before the First Robbery, and no arrow keys were recovered from his residence when it was searched on October 20, 2023. Accordingly, there is probable cause to believe that SANTOS sold, or otherwise remitted, the stolen arrow keys to another, and used the SUBJECT DEVICE to do so. There is likewise probable cause to believe that the SUBJECT DEVICE contains evidence corroborating SANTOS's location at the site of the Robberies when the Robberies took place.

*Id.* at ¶¶ 26–27.

The magistrate judge signed the warrant authorizing a search of Santos's phone, including, among other things, any texts or phone calls sent to or from Santos between the day before the first robbery and the date of his arrest, any location data between those same dates, and any photographs depicting "arrow keys, counterfeit arrow keys, envelopes, cash, checks, gift cards, credit cards, documents that contain personal identification information, and official forms of identification; or items that appear stolen from the mail." *Id.* at 42 ¶ 1.

4

The district court judge, however, suppressed the evidence from Santos's cellphone on the grounds that the search warrant was not supported by probable cause tying the cellphone to the robbery and was so bare bones that the good-faith exception to the exclusionary rule did not apply. *See United States v. Santos*, No. 23-CR-436, 2024 WL 3566983, at \*7–16 (E.D.N.Y. July 29, 2024).

The government does not challenge the district court's probable cause ruling on appeal but argues that the court erred in its determination that the good-faith exception to the exclusionary rule did not apply.

On appeal from a suppression ruling, "we review . . . factual findings for clear error" and "legal determinations, including the existence of probable cause and the good faith of officers relying on a search warrant" without deference to the district court's reasoning. *United States v. Raymonda*, 780 F.3d 105, 113 (2d Cir. 2015).[2]

Courts have recognized an exception to the exclusionary rule "[w]hen an officer genuinely believes that [they have] obtained a valid warrant from a magistrate [judge] and executes that warrant in good faith." *Id.* "[H]owever, the

---

[2] In quotations from caselaw and the parties' briefing, this summary order omits all internal quotation marks, footnotes, and citations, and accepts all alterations, unless otherwise noted.

officer's reliance on the duly issued warrant must be objectively reasonable." *Id.* And, "[t]he burden is on the government to demonstrate the objective reasonableness of the officers' good faith reliance" on the search warrant at issue. *United States v. George*, 975 F.2d 72, 77 (2d Cir. 1992).

But the good-faith exception does not apply where, among other things, "the application is so lacking in indicia of probable cause as to render reliance upon it unreasonable," or "the warrant is so facially deficient that reliance upon it is unreasonable." *United States v. Silva*, --- F.4th ----, 2025 WL 2078339, at *7 (2d Cir. 2025). This may occur when the warrant application is "totally devoid of factual circumstances to support conclusory allegations." *Id.* Santos maintains that those circumstances exist here. We disagree.

"It is the magistrate's responsibility to determine whether the . . . allegations establish probable cause," and "[i]n the ordinary case, an officer cannot be expected to question the magistrate's probable-cause determination or . . . judgment that the form of the warrant is technically sufficient." *United States v. Leon*, 468 U.S. 897, 921 (1984).

Here, the affidavit included some facts connecting the phone to be searched with the robberies, including one victim's photo-array identification of Santos as

6

the perpetrator, a video still from surveillance footage showing an individual identified as Santos on his cellphone in the vicinity of the first robbery a couple of hours before it took place, testimony that the phone in the picture matched Santos's phone, and a description of the role of cellphones in connection with the most common dispositions of postal keys. The postal inspector also attested that two additional witnesses identified Santos from video stills of the same surveillance footage clipped in the affidavit. Thus, the affidavit was not "totally devoid" of factual support. *See United States v. Clark*, 638 F.3d 89, 103 (2d Cir. 2011).

Admittedly, "[t]his case falls somewhere in between" a case with a detailed affidavit establishing a connection between the phone and the alleged crimes and an affidavit lacking any factual support whatsoever, but we conclude that the affidavit is not so "bare bones" as to render the officers' reliance on it unreasonable. *Id.* at 103–04.

On this record, the district court erred in concluding that the good-faith exception did not apply. *See United States v. Falso*, 544 F.3d 110, 128 (2d Cir. 2008) (applying the good-faith exception even though the Court found the warrant lacked probable cause because "reasonable minds [could] differ" on whether

7

probable cause existed and "[o]nce the district court ruled on the legal sufficiency of . . . the affidavit, the officers were justified in executing the warrant").

* * *

For the foregoing reasons, the district court's order is **VACATED** and the case is **REMANDED** for further proceedings consistent with this order.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court