OPINION
 

 CEDARBAUM, District Judge.
 

 Defendant Peter Rollack has been charged with twenty-four counts of racketeering and violent crimes in aid of racketeering. Rollack moves to suppress evidence obtained from a search of a Nissan Quest van in October of 1994 and from searches of his prison mail and his jail cell in December of 1997. All of these searches took place in North Carolina. An evidentia-ry hearing was held with respect to the van search on November 23, 29, and 30, 1999. For the reasons discussed below, Rollack’s motion is granted in part and denied in part.
 

 BACKGROUND
 

 On October 21,1994, state police officers searched a Nissan Quest van for contraband they believed to belong to Rollack. In January 1998, Rollack was convicted of
 
 *267
 
 federal narcotics conspiracy charges in the Western District of North Carolina. Pending and during trial, Rollack was incarcerated at the Charlotte-Mecklenberg County Central Jail in North Carolina. In December 1997, federal agents intercepted Rol-lack’s incoming and outgoing mail pursuant to two search warrants.
 
 [1]
 
 They also searched Rollack’s jail cell pursuant to a warrant. These searches will be addressed in turn.
 

 A. The Van Search
 

 On October 21, 1994, Rollack and two associates, Yaro Pack and David Gonzalez, drove to a Rockingham, North Carolina fast food restaurant in a burgundy Nissan Quest van to meet with a drug buyer, Derious Covington, regarding a debt. Acting on a tip from Mr. Covington concerning the presence of drugs in the van, local police officers detained all three men while they were outside the van near the restaurant and asked for permission to search the vehicle. Yaro Pack gave the van keys to the officers and signed a written consent to a search of the van.
 

 The officers proceeded to search the interior of the vehicle. After a short period of time, officers brought a drug-detection dog from the K-9 unit to sniff the interior of the vehicle. After the dog mildly alerted to the presence of drugs, another dog was brought to the scene. The second dog sniffed the interior and more aggressively alerted to the presence of drugs under the vehicle floor.
 

 The officers disassembled portions of the vehicle interior, seeking access to a secret compartment containing drugs. Unable to uncover such a compartment, the officers moved the van to another location, where they continued to search the vehicle. With the assistance of a Nissan mechanic, the officers located a secret compartment beneath the van’s front seats and discovered guns, cocaine, and money in the compartment.
 

 B. The Mail Intercepts
 

 Agents of the Bureau of Alcohol, Tobacco and Firearms (“ATF”) obtained warrants on December 17 and December 29, 1997 authorizing the search and seizure of:
 

 All mail matter of Petter Rollock a.k.a. Peter Rollack, both incoming and outgoing non-legal mail to and from the following persons: Xavier Williams a.k.a. “X”, Robinson Lazala a.k.a. “Rob” a.k.a. “Robert Lopez”, Brian Boyd a.k.a. “Stone” a.k.a. “Stone Killer”, Edwin Vega a.k.a. “Edwin Rivera”, Corey Brown a.k.a. “Little Bear” a.k.a. “C-B”, John Gonzales a.k.a. “Baby-J”, Shawn Stokes, Kevin Aller a.k.a. “Bemo”, and Gisette Hardy a.k.a. “Gissette Hardy-Rollock” a.k.a. “Mrs. G” a.k.a. “Lady G” a.k.a. “Lady Gisette” and others.
 

 (12/17/97 Mail Warrant; 12/29/97 Mail Warrant.) ATF Special Agent Terrell A. Tadeo applied for both warrants and submitted an affidavit in support of each. In these identical affidavits, Agent Tadeo described information supporting his belief that Rollack was using the mails to direct illegal activities of members of the gang Sex, Money and Murder (“SMM”) and had used the mails to order the murder of David Mullins on November 27, 1997. Ta-deo requested that the requirements of contemporaneous notice and execution of returns be delayed to avoid compromising the investigation.
 

 The December 17 warrant was issued by United States District Judge Graham Mullen, although the signed copy of that warrant seems to have been lost, The boilerplate language on the warrant form concerning the notice and return requirements was crossed out. United States
 
 *268
 
 Magistrate Judge Carl Horn issued the December 29 warrant, but neglected to cross out the notice and return requirements.
 

 During the course of these intercepts, federal agents reviewed all of Rollack’s incoming and outgoing mail and copied or seized six letters pursuant to the two warrants. As a result of the first intercept, Agent Tadeo copied and replaced in the mail three outgoing letters from Rollack to “Monique King,” “G. Hardy-Rollock,” and “Miss Broughton” and one incoming letter from “Emilio Romero.” Agent Tadeo seized one outgoing letter from Rollack to “Kiron Mickie.” As a result of the second intercept, Agent Tadeo seized one outgoing letter from Rollack to “Emilio Romero.” Of these names, only “G. Hardy-Rol-lock” was listed among those on the search warrant. Returns for both warrants were executed on December 30.
 

 C. The Cell Search
 

 On December 29, 1997, Magistrate Judge Horn issued a search warrant authorizing the search and seizure of the following materials in Rollack’s Charlotte-Mecklenburg County Jail cell:
 

 All mail matter both previously received and unmailed except for legal mail. Also all non legal writing materials, including but not limited to, notes, address books, lists and other writings.
 

 (12/29/97 Cell Warrant.) Agent Tadeo applied for this warrant and submitted an affidavit containing the same information as in his affidavits in support of the mail intercept warrants. Tadeo also referred in the affidavit to the incoming letter from “Emilio Romero” copied in the mail search, and expressed his belief that the letter referred to the murder of David Mullins.
 

 On the day the warrant was issued, Agent Tadeo and other officers executed the warrant in Rollack’s presence and searched Rollack’s cell. The agents seized numerous items from Rollack’s desk and from a bin under his bed, including letters received, unmailed letters, paper and notepads containing writing, and photographs.
 

 In an affidavit, Rollack states that he watched the agents initially divide the materials into two piles based on Agent Tadeo’s “yes” or “no” reactions to each letter, paper, or photograph. He also states that one officer said ‘What are we looking for ...” and that Tadeo made a call on his cellular phone to ask what documents and photographs should be taken. (Rollack Supp. Aff. ¶ 5.) After this call, according to Rollack’s affidavit, Tadeo told the other agent to “[t]ake everything.”
 
 (Id.)
 
 Finally, Rollack states that when he objected to the agents’ seizure of his photographs, Agent Tadeo replied, “[wjhatever we don’t need, we’ll give back.”
 
 (Id.)
 
 The government does not dispute these allegations.
 

 DISCUSSION
 

 I. The Search of the Van
 

 Rollack challenges the search of the van on a number of grounds: (1) that the police lacked reasonable suspicion to detain him and his associates and perform an extensive search of the van; (2) that any consent to the search was obtained through coercion; (3) that the search exceeded the scope of any consent given; and (4) that the police conduct with respect to the search was sufficiently “outrageous” as a matter of law to require suppression of the fruits of the search. The government denies all of these allegations. The government also defends the validity of the search on the grounds that Rollack lacks standing to challenge the search and that collateral estoppel bars Rollack from litigating the validity of the search. At the evidentiary hearing, the government presented evidence that the police had probable cause to detain and search the van.
 

 Police may search a vehicle without first obtaining a search warrant “[i]f a car is readily mobile and probable cause exists to believe it contains contraband.”
 
 Pennsylvania v. Labron,
 
 518 U.S. 938,
 
 *269
 
 940, 116 S.Ct. 2485, 2487, 135 L.Ed.2d 1031 (1996). Rollack does not contest that the van was readily mobile. Thus, if the police had probable cause to search the van, the search complies with the Fourth Amendment even without a warrant.
 
 [2]
 
 The scope of such a search may be as broad as if a warrant had been obtained and extends to all parts of the vehicle and any closed containers within the vehicle.
 
 United States v. Ross,
 
 456 U.S. 798, 817-18, 820, 102 S.Ct. 2157, 2168-70, 72 L.Ed.2d 572 (1982). A vehicle search may be conducted after the vehicle is seized and taken to a police station.
 
 Chambers v. Maroney,
 
 399 U.S. 42, 52, 90 S.Ct. 1975, 1982, 26 L.Ed.2d 419 (1970).
 

 The government argues that the police had probable cause to search the van based on a tip from an informant. Whether information supplied by an informant is sufficient to establish probable cause is determined by “the totality of the circumstances.”
 
 Illinois v. Gates,
 
 462 U.S. 213, 230-31, 103 S.Ct. 2317, 2328, 76 L.Ed.2d 527 (1983). Factors considered in a probable cause determination include the reliability of the informant, the basis of the informant’s knowledge, and the extent to which the informant’s information is corroborated.
 
 Id.
 
 at 233, 103 S.Ct. at 2329-30. Thus, if the police in this case reasonably relied on information received from an informant that there was contraband in the van, there was probable cause for the search.
 

 Witnesses for both the government and the defendant at the evidentiary hearing provided ample evidence of probable cause for the search. Derious Covington credibly testified that for years he had been an informant for Phil Sweatt, the officer in charge of the van search, and that his tips had led to many arrests in the past. Covington also testified that he had purchased drugs from Rollack only days before, and that he saw Rollack remove drugs from what appeared to be (and sounded like) a motorized “stash box” in the van interior. Finally, and most importantly, he testified that he called Sweatt on October 20, the night before the search, and told him the names of Rollack and his associates,
 
 [3]
 
 that they were “two Spanish and one black,” that the van plates were from out of state, that the van was a burgundy Nissan Quest, and that the van contained “drugs, money, and guns” in a hidden “stash.” Sweatt himself corroborated these communications in his testimony and stated that he relied on this information in reaching his decision to search the van.
 

 Covington’s record as a police informant establishes that he was sufficiently reliable to justify reasonable reliance on information he provided. Furthermore, his information regarding Rollack and his associates in this case was based on substantial first-hand knowledge. This information was entirely corroborated by the actual results of the search. In view of the totality of the circumstances, Sweatt reasonably relied on Covington’s tip in deciding to search the Nissan Quest van and the information in that tip was sufficient to establish probable cause for a search. Since the search remained within the scope of the probable cause, it complied fully with the requirements of the Fourth Amendment. Accordingly, Rollack’s motion is denied with respect to the fruits of the van search.
 
 [4]
 

 II. The Mail and Jail Cell Searches
 

 A. Prisoners’ Expectation of Privacy
 

 The government argues, as a threshold matter, that Rollack did not have
 
 *270
 
 a reasonable expectation of privacy in his mail or his jail cell at the time of the searches and that Rollack is thus unable to challenge the constitutionality of those searches. This contention is without merit. Prisoners do not have an expectation of privacy with respect to searches motivated by institutional security concerns and performed by prison officials.
 
 Hudson v. Palmer,
 
 468 U.S. 517, 527-28, 104 S.Ct. 3194, 3200-01, 82 L.Ed.2d 393 (1984);
 
 United States v. Cohen,
 
 796 F.2d 20, 22-23 (2d Cir.1986)R. However, when a search is performed or initiated by law enforcement officials other than those in charge of a prison and is unrelated to institutional security concerns, a prisoner has a reasonable expectation of privacy with respect to that search.
 
 Cohen,
 
 796 F.2d at 23-24.
 

 The government contends that the searches of Rollack’s mail and cell were motivated by prison security concerns because prisons have an interest in preventing inmates from engaging in criminal activity. This interpretation would expand the definition of prison security so far as to render it almost meaningless since virtually any criminal investigation can be characterized in such a manner. Since the searches at issue were not targeted at uncovering concealed weapons, drugs, or other such items clearly related to security inside the prison, and since the searches were not performed by prison officials, they are not immune from Fourth Amendment scrutiny.
 
 Id.
 

 B. Sufficiency of Supporting Affidavits
 

 Rollack also challenges the adequacy of the affidavits submitted in support of the warrants for both the mail and cell searches and requests an evidentiary hearing pursuant to
 
 Franks v. Delaware,
 
 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978). A
 
 Franks
 
 hearing is required “where the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and ... the allegedly false statement is necessary to the finding of probable cause.”
 
 Id.
 
 at 155-56, 98 S.Ct. at 2676-77. Furthermore, “[t]o mandate an evidentiary hearing, the challenger’s attack must be more than conclusory and must be supported by more than a mere desire to cross-examine.”
 
 Id.
 
 at 171, 98 S.Ct. at 2684.
 
 “Franks
 
 does not require that all statements in an affidavit be true; it simply requires that the statements be ‘believed or appropriately accepted by the affiant as true.’ ”
 
 United States v. Campino,
 
 890 F.2d 588, 592 (2d Cir.1989) (quoting
 
 Franks,
 
 438 U.S. at 165, 98 S.Ct. 2674).
 

 Rollack argues that the affidavits signed by Agent Tadeo included false statements and omissions that Tadeo knew or should have known were false or misleading. Rollack submits a single affidavit, his own, in support of his contention. This affidavit is insufficient to establish the substantial preliminary showing required to warrant a
 
 Franks
 
 hearing. The thrust of Rollack’s sworn statement is that because he did not commit any of the crimes being investigated, any evidence of such crimes referred to by Agent Tadeo in his affidavit must necessarily be false. Were this to constitute a substantial preliminary showing under
 
 Franks,
 
 any criminal defendant would be able to make such a showing by merely denying his guilt.
 

 Furthermore, even if Rollack’s affidavit were to raise an issue as to the truth of certain facts included in the Tadeo Affidavits, there is no evidence that Agent Tadeo was or should have been aware that those facts were false. A
 
 Franks
 
 challenge goes to the veracity of the affiant, not the affiant’s sources of information.
 
 Franks,
 
 438 U.S. at 171, 98 S.Ct. at 2684, 98 S.Ct. 2674. Agent Tadeo relied on information gathered by Detective Benny Tirado of the New York Police Department from three confidential informants. Rollack has presented no. evidence placing in question the reliability of Detective Tirado or his inf or-
 
 *271
 
 mants and Tadeo had no reason to doubt their reliability.
 

 Because Rollack has failed to make a substantial preliminary showing that the Tadeo Affidavits contained false or misleading information, or that Agent Tadeo had any reason to doubt the reliability of the information included in his affidavits, a
 
 Franks
 
 hearing is not warranted.
 

 C. Alleged Rule 41 Violations
 

 Rollack argues that suppression is also warranted based on a number of alleged violations of Fed.R.Crim.P. 41 by Agent Tadeo and other officers participating in the search of Rollack’s mail and jail cell. Rollack claims that the officers violated Rule 41(d) by failing to execute returns with inventories of the items seized. Rol-lack also claims that the officers failed to provide notice regarding the interception of his mail as required by Rule 41(d), or, alternatively, failed to obtain a waiver of the notice requirement.
 

 Initially, it is important to note that suppression is normally not the appropriate remedy for violations of Rule 41. As Judge Friendly explained, “violations of Rule 41 alone should not lead to exclusion unless (1) there was ‘prejudice’ in the sense that the search might not have occurred or would not have been so abrasive if the Rule had been followed, or (2) there is evidence of intentional and deliberate disregard of a provision in the Rule.”
 
 United States v. Burke,
 
 517 F.2d 377, 386-87 (2d Cir.1975).
 
 See also United States v. Pangburn,
 
 983 F.2d 449, 455 (2d Cir.1993)
 

 It is far from clear that Rule 41(d) was violated with respect to the inventory requirement. Rule 41(d) requires that officers provide to the individual whose property was searched a copy of the warrant, a receipt for the property taken, and “a written inventory of any property taken.” Agent Tadeo submitted inventories for both of these searches to Judge Mullen. Rollack argues that these inventories are incomplete. The return for the December 17 mail warrant does not include a letter from Emilio Romero to Rollack that was seized, while the return for the cell warrant refers only to “miscellaneous papers” and the like without listing specific items seized.
 

 These facts do not constitute a violation of Rule 41(d). There is no evidence that these alleged defects were anything but inadvertent. Moreover, the officers acted in good faith in executing both returns and obtaining approving signatures from a judge. Finally, and most importantly, there is no evidence of “prejudice” or “intentional or deliberate disregard” of the inventory requirement. Accordingly, even if Rule 41(d) was violated, suppression is not appropriate.
 

 Rollack also argues that the officers violated Rule 41(d) by failing to provide contemporaneous notice of the mail interception searches. Rule 41(d) generally requires that officers executing a search warrant provide notice to the person whose property is searched.
 
 Pangburn,
 
 983 F.2d at 455. However, notice may be delayed for seven days (or more upon a strong showing of necessity), allowing officers to perform so-called “sneak and peek” searches where notice of the search would compromise an ongoing investigation.
 
 Id.
 
 at 454. Notice may be delayed for additional periods upon subsequent application and order.
 
 United States v. Villegas,
 
 899 F.2d 1324, 1337 (2d Cir.1990).
 

 Rollack fails to establish that the delayed notice of the interceptions of his mail requires suppression of the fruits of those searches. Judge Mullen granted permission to delay notification regarding the first mail intercept, as indicated by his crossing out of the boilerplate language requiring notice on the face of the warrant.
 
 [5]
 
 Although this language was not crossed out on the face of the second mail
 
 *272
 
 intercept warrant, the officers acted in good faith in delaying notice based on Judge Mullen’s approval of delayed notification with respect to the first mail intercept.
 
 [6]
 
 Furthermore, there is no evidence that the search “might not have occurred or would not have been so abrasive if the Rule had been followed” or that the officers acted with “intentional and deliberate disregard” of the notice requirement.
 
 Burke,
 
 517 F.2d at 386-87. A proper warrant could easily have been obtained, since Judge Mullen was willing to authorize “sneak and peek” searches on at least two occasions (December 17, 1997 and January 20, 1998). A search of mail resulting in seizure of a single letter cannot be said to be “abrasive.” Accordingly, suppression of the fruits of the mail intercepts based on failure to provide contemporaneous notice of the searches is denied.
 

 D. Unsigned Warrant
 

 Rollack argues that the first mail intercept warrant was defective because it was not signed by a judicial officer. The copies of the December 17 warrant submitted by both Rollack and the government indeed lack a signature by, or even the name of, the authorizing judicial officer, and the warrant is thus facially invalid as presented.
 

 However, the fruits of this search need not be excluded if the search was authorized by a judicial officer or if the officers conducted the search with a good faith belief that the search was so authorized. There is ample evidence of both. Judge Mullen submitted an affirmation stating that he did in fact authorize the first mail intercept and signed a search warrant accordingly. (Mullen Aff. ¶ 3.) Judge Mullen also signed the application and affidavit for this warrant based on Agent Tadeo’s swearing and subscribing to the affidavit in Judge Mullen’s presence.
 
 (Id.
 
 ¶¶ 2-3.) Finally, Judge Mullen’s approval of a subsequent interception of Rollack’s mail on January 20, 1998 is further proof of his willingness to authorize such a search. It is likely, then, that the officers possessed a signed version of the warrant at the time they performed the search. However, even if the warrant lacked a signature, the searching officers acted reasonably in conducting the search, and the evidence seized pursuant to this search will not be suppressed on the ground that the warrant lacked a signature.
 
 See United States v. Smith,
 
 63 F.3d 766, 769 (8th Cir.1995) (upholding a search despite the absence of a signature on the warrant’s supporting affidavit based on “the inapplicability of the exclusionary rule to clerical mistakes by judges”).
 

 E. Stale Information
 

 Rollack also argues that the mail intercept warrants were defective because they were based on stale information. In
 
 United States v. Wagner,
 
 989 F.2d 69 (2d Cir.1993), the Second Circuit stated the rule governing whether information is “fresh” enough to support the issuance of a warrant:
 

 [w]hile there is no bright line rule for staleness, the facts in an affidavit supporting a search warrant must be sufficiently close in time to the issuance of the warrant and the subsequent search conducted so that probable cause can be said to exist as of the time of the search and not simply as of sometime in the past.
 

 Id.
 
 at 75.
 

 Rollack’s contention is without merit. The events discussed in Tadeo’s affidavits
 
 *273
 
 took place in late October, November, and early December of 1997. The murder of David Mullins, which was the subject of the investigation, took place on November 27,1997. The first mail search warrant was obtained on December 17, 1997. Given the nature of the allegations in the affidavit, there is no reason to believe that probable cause would have diminished during a short span in December. The information supplied in the affidavits was fresh enough to satisfy the standard set out in
 
 Wagner,
 
 and suppression of the fruits of the mail searches based on staleness is accordingly denied.
 

 F. Particularity
 

 Rollack argues that all evidence obtained from the searches of his jail cell and his incoming and outgoing mail should be suppressed because the warrants did not state with particularity the items to be seized.
 
 [7]
 

 The Fourth Amendment requires that search warrants “particularly describfe] the place to be searched, and the persons or things to be seized.” The particularity requirement “is rooted in the framers’ abhorrence of the ‘general warrant’' — i.e., a warrant which gave the executing officer freedom to undertake an ‘indiscriminate rummaging through citizens’ personal effects.’ ”
 
 United States v. Heatley,
 
 No. 96 Cr. 515, 1998 WL 691201, at *6 (S.D.N.Y. Sep.30, 1998)
 
 (Heatley
 
 I) (quoting
 
 United States v. George,
 
 975 F.2d 72, 75 (2d Cir.1992)). The requirement serves two related functions: first, it “enable[sj the executing officer to ascertain and identify with reasonable certainty those items that the magistrate has authorized him to seize,” and second, it “reduces the breadth of the search to that which a detached and neutral magistrate has determined is supported by probable cause.”
 
 George,
 
 975 F.2d at 75-76.
 

 A warrant does not violate the particularity requirement merely because its scope is broad or its language is general. “Courts tend to tolerate a greater degree of ambiguity where law enforcement agents have done the best that could reasonably be expected under the circumstances, have acquired all the descriptive facts which a reasonable investigation could be expected to cover, and have insured that all those facts were included in the warrant.”
 
 United States v. Young,
 
 745 F.2d 733, 759 (2d Cir.1984).
 

 Even if a warrant is insufficiently particular on its face, in some circumstances the information contained in a warrant’s supporting affidavit can provide the requisite particularity to limit the scope of a search. When an affidavit is “incorporated by reference in the warrant itself and attached to it,” the information contained in that affidavit can cure the warrant’s lack of particularity.
 
 George,
 
 975 F.2d at 76. A mere recitation on the face of the warrant that it was issued on the basis of a particular affidavit, however, is not sufficient to incorporate the affidavit by reference; rather, the warrant must “direct the executing officers to refer to the affidavit for guidance concerning the scope of the search.”
 
 Id.
 
 Neither the mail warrants nor the cell warrant include such a direction. Consequently, the warrants’ lack of particularity cannot be cured by incorporation of the supporting affidavit.
 

 The incorporation and attachment requirements are not inflexible, however. A warrant lacking in particularity can be saved if “the involved parties were aware of the scope of and limitations on the search,” since in such circumstances “the functional purposes of those two requirements ... [are] fully satisfied.”
 
 United States v. Bianco,
 
 998 F.2d 1112, 1116-17 (2d Cir.1993). In
 
 Bianco,
 
 the court upheld a search based on a warrant lacking in particularity because the circumstances in-
 
 *274
 
 cheated that the searching officers were adequately aware of the scope of and limitations on their search:
 

 The affidavit was present at the time of the search, and spells out quite clearly the nature and purpose of the proposed search. It explains in detail the motivation behind the search and the nature of the documents sought. When the warrant and affidavit are read together, there is no ambiguity. Moreover, although the warrant may not have explicitly incorporated the affidavit, the presence and activity of agent Hutton, who had read the affidavit and who approved each seizure, satisfies us that the limitations included in the affidavit were observed.
 

 Bianco,
 
 998 F.2d at 1117. The court thus held that “because of the presence at the search of the affidavit, agent Efutton’s active supervision of the search, the specificity of the affidavit, and the fact that the agents did not exceed the scope of the warrant and affidavit when read together, we conclude that the search was reasonable.”
 
 Id.
 

 A search can also be saved based on the “good faith” exception to the exclusionary rule. The exclusionary rule does not apply to “evidence seized in objectively reasonable reliance on a warrant later declared invalid.”
 
 United States v. Heatley,
 
 41 F.Supp.2d 284, 290 (S.D.N.Y.1999)
 
 (Heatley II); see also United States v. Leon,
 
 468 U.S. 897, 919-21, 104 S.Ct. 3405, 3418-20, 82 L.Ed.2d 677 (1984). However, when the Supreme Court established the good faith exception it noted that “depending on the circumstances of the particular case, a warrant may be so facially deficient — i.e., in failing to particularize the place to be searched or the things to be seized — that the executing officers cannot reasonably presume it to be valid.”
 
 Leon,
 
 468 U.S. at 923, 104 S.Ct. at 3421, 104 S.Ct. 3405.
 
 See also United States v. Buck,
 
 813 F.2d 588, 593 n. 2 (2d Cir.1987) (holding prospectively that good faith does not apply when police “attempt to introduce as evidence the fruits of searches undertaken on the basis of warrants containing only a catchall description of the property to be seized”).
 

 The warrant for the cell search authorized the seizure of two classes of items: (1) “[a]ll mail matter” excluding legal mail and (2) “all non legal writing materials,” limited only by the inclusion without limitation of a few specific types of items: “notes, address books, lists and other writings.” The warrants for the mail intercepts authorized the seizure of all non-legal mail to and from nine specified individuals “and others.” Because the crime being investigated directly concerned Rollack’s alleged use of the mail to direct criminal activities, the seizure of correspondence from Rollack’s jail cell and incoming and outgoing mail will be addressed separately from the seizure of other items.
 

 1. Seizure of Mail
 

 On its face, each warrant is insufficiently particular with respect to the types of letters to be seized. The cell warrant is limited only to non-legal mail. The mail intercept warrants are also limited to nonlegal mail but include an illustrative list of names to or from whom correspondence may be copied or seized. Neither warrant specifies the nature of the crimes being investigated. More detailed warrants have been found to be insufficiently particular under the Fourth Amendment.
 
 See Bian-co,
 
 998 F.2d at 1116 (finding insufficiently particular a warrant authorizing seizure of notes, ledgers, envelopes, papers, and records containing initials, names, addresses, dollar amounts, codes, figures “and the Like”).
 

 However, a finding that the face of the warrant lacks particularity does not end the inquiry. A warrant similar to these was challenged as insufficiently particular in
 
 United States v. Heatley,
 
 41 F.Supp.2d 284 (S.D.N.Y.1999)
 
 (Heatley II),
 
 where the defendant contested the interception of his
 
 *275
 
 incoming and outgoing mail. While Judge Mukasey expressed “misgivings” concerning the scope of the warrant, he upheld the search based on the good faith exception to the exclusionary rule:
 

 [A]lthough the warrant did not contain any direction to limit the search and seizure beyond possibly confining it to non-legal mail, the person or persons conducting the search were justified in relying on the warrant and I see no basis for suggesting That they did not do so in good faith. This is especially true because, as to mail, there can be no alternative other than to examine everything, at least cursorily, in order to determine what is relevant and what is not.
 

 Id.
 
 at 291.
 
 See also Andresen v. Maryland,
 
 427 U.S. 463, 481 n. 11, 96 S.Ct. 2737, 2749 n. 11, 49 L.Ed.2d 627 (1976). Judge Muka-sey noted that the accompanying affidavit described in detail the crimes being investigated and concluded that:
 

 [i]n these circumstances, when the only thing being looked at was correspondence, and thus the only things that could be seized were statements contained in that correspondence, the warrant is not impermissibly broad.
 

 Heatley II,
 
 41 F.Supp.2d at 291.
 

 The seizure .of Rollack’s correspondence was similarly valid.
 
 [8]
 
 The affidavits contained sufficiently detailed information to indicate the nature of the evidence sought from Rollack’s mail and provided probable cause to search through all of Rollack’s correspondence for evidence of his use of the mail to direct racketeering activities. Further, not only had Agent Tadeo read the affidavits by the time he supervised the searches, he had prepared and signed them, making it clear that he was aware of the scope of and limitations on the searches.
 

 Rollack argues that the searches of his correspondence were nonetheless excessively broad because approximately 150 letters were seized from his cell, including letters which he claims were purely personal. While it is true that some irrelevant correspondence was seized, “the magnitude of a search is insufficient, by itself, to establish a constitutional violation.”
 
 United States v. Wuagneux,
 
 683 F.2d 1343, 1352 (11th Cir.1982). “The relevant inquiry is whether the search and seizures were reasonable under all the circumstances.”
 
 Id.
 
 “[T]he drastic remedy of the suppression of all evidence seized is not justified unless those executing the warrant acted ‘in flagrant disregard’ of the warrant’s terms.”
 
 United States v. Matias,
 
 836 F.2d 744, 747-48 (2d Cir.1988).
 

 Agent Tadeo and the other searching officers cannot be said to have acted in flagrant disregard of the warrant’s terms or the limitations of the affidavit. Any ambiguity concerning which correspondence should be seized was the result not of a failure by the officers to understand the limitations on their search but rather of the nature of the correspondence to be seized. As he stated in his affidavit, Agent Tadeo suspected that Rollack had ordered the murder of David Mullins by writing his instructions in a code used by SMM to avoid interception of their communications. Given the nature of the letters to be seized, it would be unreasonable to expect the searching officers to have remained in Rollack’s cell to determine which letters were evidence of a crime and which were not.
 
 See Andresen v. Maryland,
 
 427 U.S. at 482 n. 10, 96 S.Ct. at 2749 n. 10 (“The complexity of an illegal scheme may not be used as a shield to avoid detection when the State has demonstrated probable cause to believe that a crime has been committed and probable cause to believe that evidence of this crime
 
 *276
 
 is in the suspect’s possession”);
 
 United States v. Regan,
 
 706 F.Supp. 1102, 1113 (S.D.N.Y.1989) (“[T]he complexity of the defendants’ activities and suspected crimes diminishes the requisite threshold of particularity for satisfying the Fourth Amendment”). The officers thus did “the best that could reasonably be expected under the circumstances.”
 
 Young,
 
 745 F.2d at 759.
 

 Furthermore, if the officers had remained in the cell to review Rollack’s letters, the intrusiveness might have been even greater, and Rollack’s privacy in his correspondence would have been no less compromised.
 
 See United States v. Schandl,
 
 947 F.2d 462, 465-66 (11th Cir.1991) (“[I]t might have been far more disruptive had the agents made a thorough search of each individual document before removing it ... [t]o insist on such a practice ‘would substantially increase the time required to conduct the search, thereby aggravating the intrusiveness of the search.’ ”) (quoting
 
 Wuagneux,
 
 683 F.2d at 1353);
 
 United States v. Wapnick,
 
 No. CR-92-419, 1993 WL 86480, at *7 (E.D.N.Y. Mar. 16, 1993) (upholding search “in light of the complex nature of the schemes alleged, the necessity of seizing many documents in order to piece together an accurate picture of defendants’ activities and the obvious impraeticality of requiring agents to make on the spot determinations as to which documents contained evidence of illegality and which did not”);
 
 United States v. Blakeney,
 
 942 F.2d 1001, 1028 n. 13 (6th Cir.1991) (upholding seizure of entire suitcase of items because it was “impracticable to inventory and record at the site of the search the numerous contents of the suitcase which contained incriminating evidence” and holding that “the seizure of irrelevant items within the suitcase along with the relevant items does not violate the fourth amendment, provided the irrelevant items are returned”). The seizure of Rollack’s letters from his cell was thus reasonable under all the circumstances. Accordingly, suppression of Rollack’s correspondence is not appropriate.
 
 [9]
 

 2. “Other Writings” and Photographs ■
 

 The seizure of writings other than correspondence and photographs is another matter. The remainder of the warrant authorizes the sweeping seizure of all of Rollack’s “notes,” “lists,” “address books,”
 
 [10]
 
 and “other writings.” Although the supporting affidavit extensively discusses information concerning Rollack’s use of the mail to direct SMM’s illegal activities, it provides no information regarding which “notes,” “lists,” and “other writings” should be seized. The inventory for the search describes what was seized in only the most general terms. However, a government discovery document shows that approximately 51 items, including notes, scraps of paper, a jail handbook, envelopes, cards, and published articles, were seized, as well as 52 photographs.
 

 With respect to these items, the lack of particularity on the face of the cell warrant was not cured by Agent Tadeo’s supervision of the search despite his familiarity with the supporting affidavit. The affidavit provided no direction concerning which items other than letters should be seized. The officers made no attempt to limit the seizure to potentially incriminating items. For example, items seized included an “info sheet on STDs,” a newspaper article from 1996, an “Internet article,” a “Mecklenburg County Jail Handbook,” “raps,” and a list of “Black leaders in the early 1900s.” Rollack contends, and the government does not dispute, that the officers “took all of [his] personal papers and pictures.” (Rollack Supp. Aff. ¶ 6.)
 

 
 *277
 
 Furthermore, neither the affidavit nor the warrant itself authorized the seizure of photographs. Apart from the particularity analysis, the seizure of the photographs was invalid because photographs are not “mail” or “other writings” authorized for seizure. There is no evidence that the photographs were necessarily part of letters, or that the photographs were in plain view and their criminal character immediately apparent. Thus, the photographs are suppressed on the independent ground that their seizure was outside the scope of the warrant and not authorized by any exceptions to the warrant requirement.
 

 Finally, the good faith exception does not save the cell search. Even if the officers believed that the warrant legitimately authorized the seizure of all of Rollack’s writings, such a belief is not objectively reasonable, since both
 
 Leon
 
 and
 
 Buck
 
 make it clear that warrants lacking in particularity cannot reasonably be presumed to be valid. Furthermore, no officer could reasonably believe the warrant authorized the seizure of photographs.
 

 When one portion of a warrant is valid but the remainder violates the particularity requirement, partial suppression is appropriate.
 
 See United States v. George,
 
 975 F.2d 72, 75 (2d Cir.1992) (finding insufficiently particular the portion of a warrant authorizing seizure of “any other evidence relating to the commission of a crime” but upholding portion of warrant authorizing seizure of a particular set of items). Accordingly, though Rollack’s motion is denied with respect to the seizure of his letters, the motion is granted with respect to all other items seized from his cell.
 

 CONCLUSION
 

 Rollack’s motion is granted with respect to items other than correspondence seized from the search of his jail cell, and denied with respect to correspondence. The government is ordered to return to Rollack all correspondence which it does not intend to use as evidence at trial. The remainder of the motion is denied.
 

 SO ORDERED.
 

 [1]
 

 . A third warrant was issued on December 31 authorizing continued interception of Rol-lack’s mail, but no mail was copied or seized pursuant to it. Further interception of Rol-lack's mail was authorized and completed in January 1998, but the government has stated that it does not intend to use any of this mail as evidence in its case in chief. (Gov’t Supp. Mem. at 6 n. 8.)
 

 [2]
 

 . Apparently a warrant was obtained at some point during the course of the search. However, the government does not rely on the warrant to defend the validity of the search.
 

 [3]
 

 . Rollack and his associates were using assumed identities at the time. Covington identified Rollack in court as "Pistol Pete,” the same name Covington provided to Sweatt.
 

 [4]
 

 . Since my ruling on probable cause is sufficient to validate the van search, I do not address the merits of other contentions raised regarding its validity.
 

 [5]
 

 . Rollack's contention that this warrant was invalid because it lacked a signature by the authorizing judge will be addressed separately-
 

 [6]
 

 . Notice was delayed for ten days, which was the duration of the search warrant. Although the Second Circuit generally reads Rule 41(d) to limit delayed notification to seven days, the Fourth Circuit (where the searches occurred) has not addressed this aspect of Rule 41(d), making it reasonable for searching officers to believe in the validity of a judge’s authorization of a longer delay.
 
 Cf. United States v. Buck,
 
 813 F.2d 588, 593 (2d Cir.1987) (holding that good faith applied since the Third Circuit, where the search occurred, had not yet "spelled out” the requirement at issue).
 

 [7]
 

 . Rollack also argues that the search exceeded the scope of the probable cause. As the following section makes clear, this point is moot since any items for which probable cause was arguably lacking are suppressed on other grounds.
 

 [8]
 

 . The portion of the mail intercept warrant authorizing the seizure of mail to or from nine specific individuals is sufficiently particular on its face. The letter seized pursuant to this provision is thus not suppressed on the independent ground that it was adequately specified on the face of the warrant.
 

 [9]
 

 . Nevertheless, the government is ordered to return to Rollack any correspondence that will not be used as evidence at trial.
 

 [10]
 

 . The seizure of address books would have been valid because address books are easily identifiable and are related to correspondence. However, it does not appear that any address books were seized, so this point may be of no consequence.