09-0636-cr
United States v. Rosa

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

August Term 2009

(Argued: March 2, 2010           Decided: October 27, 2010)

Docket No. 09-0636-cr

-----------------------------------------------------x

UNITED STATES OF AMERICA,

Appellee,

-- v. --

EFRAIN J. ROSA,

Defendant-Appellant.

-----------------------------------------------------x

B e f o r e :  WALKER and LIVINGSTON, Circuit Judges, and KAPLAN, District Judge.[*]

Defendant-Appellant Efrain J. Rosa appeals from a judgment of the United States District Court for the Northern District of New York (Norman A. Mordue, Chief Judge) convicting him of producing child pornography and of witness tampering, and sentencing him to 120 years' imprisonment. Rosa challenges the district court's denial of his motion to suppress physical evidence seized from his apartment, arguing that officers violated the Fourth Amendment by executing an overbroad search warrant that was so plainly defective that the good faith

---

[*]    The Honorable Lewis A. Kaplan, of the United States District Court for the Southern District of New York, sitting by designation.

exception to the exclusionary rule does not apply. While we agree with Rosa that the search warrant fails for lack of particularity and, in light of Groh v. Ramirez, 540 U.S. 551 (2004), cannot be cured by reference to unincorporated, unattached supporting documents, we conclude that the district court correctly refused to exclude the resulting evidence, and therefore AFFIRM.

JAMES P. EGAN, Office of the Federal Public Defender (Alexander Bunin, Federal Public Defender, and Lisa A. Peebles, First Assistant Federal Public Defender, on the brief), Syracuse, N.Y., for Defendant-Appellant.

BRENDA K. SANNES, Assistant United States Attorney (Andrew T. Baxter, Acting United States Attorney for the Northern District of New York, and Lisa M. Fletcher, Assistant United States Attorney, of Counsel, on the brief), Syracuse, N.Y., for Appellee.

JOHN M. WALKER, JR., Circuit Judge:

Defendant-Appellant Efrain J. Rosa appeals from the February 12, 2009 judgment of the United States District Court for the Northern District of New York (Norman A. Mordue, Chief Judge) convicting him, upon a conditional guilty plea, of three counts of producing child pornography and one count of witness tampering. Prior to his guilty plea, Rosa moved to suppress physical evidence seized from his home on the basis that it was taken pursuant to an overbroad search warrant that failed to

2

state how electronic items to be seized were connected to any suspected criminal activity or, more specifically, child pornography. While we agree with Rosa that the Supreme Court's decision in <u>Groh v. Ramirez</u>, 540 U.S. 551 (2004), has abrogated <u>United States v. Bianco</u>, 998 F.2d 1112 (2d Cir. 1993), to disallow consideration of unattached and unincorporated supporting documents to cure an otherwise defective search warrant, and that the warrant in this case is thus constitutionally invalid, we conclude that the district court correctly refused to exclude the resulting evidence. We therefore AFFIRM the district court's denial of Rosa's motion to suppress.

**BACKGROUND**

Late on September 26, 2007, the Oswego County, New York, Sheriff's Office began investigating possible child exploitation by Efrain J. Rosa after Deputy Sheriff John Burke was dispatched to a local address upon receipt of a 911 call from two mothers reporting that their minor sons had just disclosed being sexually abused by a neighbor, whom the boys referred to only as "J." Upon speaking with the two women and interviewing each of the boys, Deputy Sheriff Burke learned that "J" had shown the boys files on his computer containing nude pictures of the boys and other children and that "J" had engaged in sexual conduct with

3

the boys.  The boys further stated that "J" kept three laptop computers in his apartment, had a USB flash drive on which he kept images of nude children that included images of the two boys, had a pistol in his bedside table, and had sexually abused each of the boys on multiple occasions over a period of two months.  In the course of the investigation, at approximately 2:00 a.m., the responding officers sought the assistance of Oswego County Investigator Bryan Blake, who had specialized training in performing computer forensic exams in child pornography cases.  Based on the information provided to him by Deputy Sheriff Burke and another officer, the sworn statements of the two boys and one of the mothers, and his own specialized computer training, Investigator Blake prepared a search warrant application and affidavit, which he then presented to Granby Town Justice Bruce Wells in connection with his request for a search warrant of Rosa's apartment.

On September 27, 2007, at 4:10 a.m., Judge Wells issued a search warrant directing the Oswego County Sheriff's Office to search

> [t]he entire residence known as 30 West 11th Street Building E Apartment 1 Chateau West Apartments in the Town of Granby, County of Oswego, State of New York. This is to include any containers or rooms whether locked or otherwise[ ]

for the following property:

> The property sought to be seized and searched is described as computer equipment, electronic digital

4

storage media included but not limited to floppy diskettes, compact disc, hard drives whether mounted in a computer or otherwise, video or audio tapes, video surveillance systems, video and digital camera systems, printing devices, monitors, firearms and any written and/or printed and/or electronic stored notes or records which would tend to identify criminal conduct and any personal papers or documents which tend to identify the owner, leasee or whomever has custody or control over the premises searched or the items seized.

While the search warrant itself did not incorporate any supporting documents, or set forth the nature of the suspected criminal activity, section A of the search warrant application stated that the property to be searched was evidence of three New York criminal offenses–two sex offenses, one of which related to crimes involving child pornography, and one firearms offense.[1] Sections B and C of the search warrant application then described the location to be searched and the items to be searched and/or seized identically to the descriptions used in the search warrant. Finally, the search warrant application requested that "the court issue a search warrant directing the search as set forth in section C of this application for property described and set forth in sections A and B of this application and the seizure thereof." Investigator Blake swore to the information in the search warrant application before Judge Wells, and the application bore each man's signature.

---

[1] Specifically, the application listed the suspected violation of Articles 130 ("Sex offenses"), 263 ("Sexual performance by a child"), and 265 ("Firearms and other dangerous weapons") of New York State's Penal Law.

The materials presented to Judge Wells also included an affidavit by Investigator Blake that (a) incorporated the statements made by each of the boys and one of the two women, (b) explained Investigator Blake's forensics training and the characteristics common to individuals engaged in the production of child pornography and in child molestation, and (c) set forth Rosa's New York criminal history and lack of a pistol permit. The affidavit also stated the following as to the items specified for seizure:

> All of the materials requested for seizure will identify children who are being sexually exploited through child molestation and child pornography. The materials will also identify other adults who are engaging in the sexual exploitation of children by these means. In addition, these materials will demonstrate the sexual proclivity, inclination, preference, and activities of the person under investigation providing evidence that will tend to show that the person under investigation has committed felonies.

After issuance of the search warrant, Investigator Blake convened a team of officers, proceeded to Rosa's apartment, and, at approximately 5:00 a.m., executed the warrant. During the search, officers seized numerous items, including, inter alia, six computers, multiple USB thumb drives, USB cables, a Sony Playstation, two digital cameras, multiple external hard drives, a cassette recorder, two USB cameras, numerous compact discs, a pair of handcuffs, condoms, three marijuana pipes, a handgun, ammunition, and over seventy grams of marijuana. Investigator

Blake personally participated in the execution of the warrant and, as the warrant's affiant, was responsible for ensuring that the items seized were within the scope of the approved search.

Investigator Blake subsequently performed a forensic analysis of the computers and related storage media, during which he discovered several thousand images and over a hundred videos of child pornography. Investigator Blake also uncovered three digital file folders, two of which were labeled with the complainants' first names, that contained sexually explicit images of minor children, including images of the defendant engaging in sexual conduct with each of the complainants. File data from the images indicated that they were produced by the same type of camera as the one seized from Rosa's apartment.

In October 2007, following his arrest and arraignment on state court charges, a federal grand jury indicted Rosa on three counts of producing child pornography. In February 2008, Rosa moved to suppress post-arrest statements he made to law enforcement officers, arguing that the statements were involuntary, made under duress, and taken despite his request for counsel, all in violation of the Fifth Amendment. On March 13, 2008, the grand jury returned a nineteen-count superseding indictment charging Rosa with three counts of producing child pornography, one count of witness tampering, two counts of attempting to receive child pornography in interstate commerce,

and thirteen counts of possessing child pornography.

In June 2008, Rosa filed a second motion to suppress, this time arguing that physical evidence seized from his apartment was obtained in violation of the Fourth Amendment. Specifically, Rosa argued that the issuing date on the search warrant was altered, that the officers failed to provide him with or show him a copy of the warrant, that the warrant lacked particularity and was overbroad because it allowed for the seizure of any items that "would tend to identify criminal conduct," and that the inventory from the search lacked sufficient detail. In a supplemental memorandum, Rosa further described the search warrant's lack of particularity, arguing that it failed to show "how the items to be seized are connected to criminal activity" or to "state or make any mention of child pornography." Thus, according to Rosa, the warrant purportedly authorized a general search of his electronic equipment without providing any guidance to the executing officers as to the type of criminal conduct suspected or the particular items to be seized.

On August 6, 2008, following an evidentiary hearing as to Rosa's post-arrest statements only, the district court, in a ruling from the bench, denied Rosa's motion to suppress those statements as well as his subsequent motion to suppress physical evidence seized from his apartment. As to Rosa's claim that the search warrant lacked particularity, the district court declined

8

to address Rosa's arguments that (1) the warrant did not state the nature of the crime suspected or the items to be seized with particularity, and (2) the warrant contained two "catch all" phrases of the type courts have found to be overbroad. Rather, the district court assumed without deciding that Rosa was correct on each of these points, but concluded that any such failure "d[id] not render the warrant incurably defective" because "the functional purposes of [incorporation and attachment], to insure that all parties involved are informed of the scope of and limits upon the authorized search, were fully satisfied." Oral Order Denying Motions to Suppress, United States v. Rosa, No. 07-cr-00443 (NAM) (N.D.N.Y. Aug. 6, 2008) (citing Bianco, 998 F.2d at 1117). After considering the entirety of the documents presented to the town justice, as well as the additional facts that Investigator Blake was both the affiant and the officer who executed the warrant, that Investigator Blake had specialized training in investigating cases of child pornography, and that the items actually seized were connected to the crimes charged, the district court concluded that the scope of the search was properly limited. The district court further concluded that even if the warrant were deemed invalid, the officers reasonably relied on it in executing a limited search of Rosa's apartment. The district court rejected Rosa's motion to suppress his post-arrest statements after finding the statements were voluntarily

made and lawfully obtained.

On October 9, 2008, Rosa pleaded guilty to three counts of producing child pornography, in violation of 18 U.S.C. § 2251(a), and one count of witness tampering, in violation of 18 U.S.C. § 1512(b)(1), while reserving his right to appeal from the district court's denial of his motions to suppress.  On February 12, 2009, the district court sentenced Rosa to a thirty-year term of imprisonment on each of the four counts to which he plead guilty, to be served consecutively, for a total of 120 years' imprisonment, with lifetime terms of supervised release on the child pornography counts and a three-year term on the witness tampering count, all to be served concurrently.

This appeal followed.

**DISCUSSION**

On appeal, Rosa challenges only the district court's denial of his motion to suppress physical evidence seized from his apartment.  We review the district court's factual findings for clear error, viewing the evidence in the light most favorable to the government, and its legal conclusions de novo.  See United States v. Worjloh, 546 F.3d 104, 108 (2d Cir. 2008) (per curiam), cert. denied, 130 S. Ct. 3434 (2010).

**I.    The Fourth Amendment's Particularity Requirement**

The Fourth Amendment to the U.S. Constitution provides:

10

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV. Thus, the Fourth Amendment protects against "wide-ranging exploratory searches" unsupported by probable cause, Maryland v. Garrison, 480 U.S. 79, 84 (1987), by mandating that a search warrant describe with particularity the place to be searched and the persons or things to be seized. "The Fourth Amendment by its terms requires particularity in the warrant, not in the supporting documents." Groh, 540 U.S. at 557 (a warrant, however, may cross-reference and be accompanied by supporting documents); see also United States v. Waker, 534 F.3d 168, 172 (2d Cir. 2008) (discussing Groh). We note that, while Rosa argues that the search warrant in this case lacked particularity because it purportedly authorized a general search of his digital media for evidence of any criminal activity, he has never asserted that the warrant was issued in the absence of probable cause that he was engaged in child molestation or child pornography.

Rosa principally argues that because it failed to state with any level of particularity the specific criminal activity alleged or the type of digital evidence to be sought from the electronic items seized, the warrant authorized the officers to conduct an

11

unfettered search of the contents of his numerous electronic devices, any one of which might contain sensitive personal information unrelated to the suspected crimes of child pornography and child molestation. For example, officers conducting a search pursuant to the explicit terms of the warrant might review expense reports, income-related files and correspondence, and federal filing information in search of evidence of tax evasion. Or officers might read through e-mail correspondence in search of evidence of an internet-based phishing scheme. As a consequence, Rosa effectively argues that the warrant's authorization of an uncircumscribed search of his electronic equipment violated the Fourth Amendment's core protection against general searches because it provided the government with unrestrained access to electronic records of his daily activities and private affairs. See United States v. Otero, 563 F.3d 1127, 1132 (10th Cir. 2009) ("The modern development of the personal computer and its ability to store and intermingle a huge array of one's personal papers in a single place increases law enforcement's ability to conduct a wide-ranging search into a person's private affairs, and accordingly makes the particularity requirement that much more important.").

We agree with Rosa that the search warrant in this case lacked the requisite specificity to allow for a tailored search of his electronic media. The warrant was defective in failing to

12

link the items to be searched and seized to the suspected criminal activity–i.e., any and all electronic equipment potentially used in connection with the production or storage of child pornography and any and all digital files and images relating to child pornography contained therein–and thereby lacked meaningful parameters on an otherwise limitless search of Rosa's electronic media.  See United States v. Buck, 813 F.2d 588, 590 (2d Cir. 1987) ("[T]he particularity requirement 'makes general searches . . . impossible and prevents the seizure of one thing under a warrant describing another.  As to what is to be taken, nothing is left to the discretion of the officer executing the warrant.'" (quoting Marron v. United States, 275 U.S. 192, 196 (1927))).

Here, the warrant directed officers to seize and search certain electronic devices, but provided them with no guidance as to the type of evidence sought.  See United States v. George, 975 F.2d 72, 76 (2d Cir. 1992) ("Mere reference to 'evidence' of . . . general criminal activity provides no readily ascertainable guidelines for the executing officers as to what items to seize. . . . [A]uthorization to search for 'evidence of a crime,' that is to say, any crime, is so broad as to constitute a general warrant.").  We therefore conclude that the warrant failed to describe with particularity the evidence sought and, more specifically, to link that evidence to the criminal activity

13

supported by probable cause.  As a result, the warrant violated

the Fourth Amendment's proscription against general searches.

See Bianco, 998 F.2d at 1116 (noting that the subject warrant,

when viewed by itself, was impermissibly broad because it

described "neither the precise items to be seized nor the

possible crimes involved"); see also United States v. Burgess,

576 F.3d 1078, 1091 (10th Cir. 2009) ("If the warrant is read to

allow a search of all computer records without description or

limitation it would not meet the Fourth Amendment's particularity

requirement.").

The Government relies on our decision in Bianco to argue

that any defect in the search warrant may be cured by reference

to its supporting documents, which make clear that the search was

limited to gathering evidence of three New York crimes, including

crimes of child pornography and child molestation.[2]  In Bianco,

we held that a warrant authorizing the seizure of "[N]otes,

Ledgers, Envelopes, Papers, and Records Containing Initials,

Names, Addresses, Dollar Amounts, Codes, Figures, and the Like:

---

[2]  We reject the Government's contention that all of the electronic equipment seized from Rosa's apartment could be searched without a warrant because it was subject to later forfeiture.  The Government's position that the entire contents of Rosa's computers and related storage media could be searched under the terms of this warrant leads to the evisceration of the Fourth Amendment's requirement of an ex ante probable cause determination.  See United States v. Grubbs, 547 U.S. 90, 99 (2006) (explaining that the Fourth Amendment protects property owners by interposing, ex ante, the impartial judgment of a judicial officer).

14

United States Currency," was not particular enough to limit the scope of the search to evidence of the defendant's suspected crimes of loansharking and extortion. Id. at 1115. We further held, however, that this lack of particularity "[did] not render the warrant incurably defective." Id. at 1116. Rather, we looked to the particular facts in Bianco, and concluded that, despite the absence of express incorporation and the lack of attachment of the affidavit to the warrant, the federal agents and the defendant were aware of the scope of and limitations on the search, both of which were spelled out clearly in the affidavit supporting the search warrant application. Id. at 1116-17. But see George, 975 F.2d at 76 (in a case decided only one year prior to Bianco, stating that "[r]esort to an affidavit to remedy a warrant's lack of particularity is only available when it is incorporated by reference in the warrant itself and attached to it").

To the extent that Bianco permits the consideration of unincorporated and unattached supporting documents to cure an otherwise defective search warrant, however, it has been abrogated by the Supreme Court's decision in Groh. In Groh, federal agents from the Bureau of Alcohol, Tobacco and Firearms (ATF) applied to search a private ranch in Montana for "any automatic firearms or parts to automatic weapons, destructive devices to include but not limited to grenades, grenade

15

launchers, rocket launchers, and any and all receipts pertaining to the purchase or manufacture of automatic weapons or explosive devices or launchers" after private visitors to the ranch reported seeing a stockpile of weaponry and explosive devices on the premises.  540 U.S. at 554.  Along with the application, the investigating ATF agent prepared a detailed affidavit setting forth the factual basis for the search and a warrant form.  Id. The magistrate judge signed the warrant form, which failed to set forth any of the items to be seized and instead described the residential structure on the property as the concealed item. Thereupon, the search warrant application and affidavit were sealed.  A team of federal and state officers, led by the ATF agent, executed the search warrant the next day.  As the search was underway, the ATF agent described to the homeowners the objects of the search but ultimately failed to uncover any illegal weapons or explosives.  Id. at 555.

In a civil suit for damages against the ATF agent and the other executing officers, the homeowners asserted, inter alia, a Fourth Amendment violation.  Id. at 555.  Before the Supreme Court, the ATF agent-petitioner conceded that the warrant was facially deficient because it lacked any description of the type of evidence sought but pointed to the specificity in the application.  Id. at 557.  In addressing whether the supporting documents could save the warrant, the Court stated that "[t]he

16

fact that the _application_ adequately described the 'things to be seized' does not save the _warrant_ from its facial invalidity" because the Fourth Amendment "by its terms requires particularity in the warrant." Id. (emphasis in original). Having concluded the warrant was deficient for failing to describe the items to be seized, the Court considered it irrelevant that the magistrate judge had issued the warrant based on probable cause, that the ATF agent had orally described to the homeowners the items to be seized, and that the actual search had not exceeded the limits contemplated by the magistrate judge on the basis of the search warrant application and affidavit. Id. at 558. In rejecting the ATF agent-petitioner's further claim that the warrant should be upheld because the goals of the particularity requirement were met under the facts of the case, the Court stated that the lack of particularity in the warrant gave no written assurance that the magistrate judge had found probable cause to search and seize all of the items listed in the affidavit and that it was no answer that the agents exercised self-restraint in executing the otherwise limitless search authorized by the warrant. Id. at 560-61.

While we recognize that this case differs from Groh because the warrant here did list specific items to be seized, the description in the search warrant of Rosa's residence was overbroad and provided the officers with no judicial limit on the

17

scope of their search, especially as it related to the seizure of electronically stored notes and records tending to identify criminal conduct. Cf. Groh, 540 U.S. at 561; see United States v. Liu, 239 F.3d 138, 140 (2d Cir. 2000) ("A warrant must be sufficiently specific to permit the rational exercise of judgment by the executing officers in selecting what items to seize." (internal quotation marks and alterations omitted)). Because we may no longer rely on unincorporated, unattached supporting documents to cure an otherwise defective search warrant, the warrant fails for lack of particularity.

**II.  Application of the Exclusionary Rule**

A violation of the Fourth Amendment does not necessarily result in the application of the exclusionary rule, however. "Indeed, exclusion has always been our last resort, not our first impulse." Herring v. United States, 129 S. Ct. 695, 700 (2009) (internal quotation marks omitted).

Application of the exclusionary rule depends on the "efficacy of the rule in deterring Fourth Amendment violations in the future" as well as a determination that "the benefits of deterrence . . . outweigh the costs." Id.; see also United States v. Julius, 610 F.3d 60, 66-67 (2d Cir. 2010) (discussing Herring). Moreover, "[t]he extent to which the exclusionary rule is justified by these deterrence principles varies with the culpability of the law enforcement conduct." Herring, 129 S. Ct.

18

at 702.  Thus, in deciding to suppress evidence, we look to whether "police conduct [is] sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid by the justice system."  Id.; see also United States v. Leon, 468 U.S. 897, 911 (1984) ("[A]n assessment of the flagrancy of the police misconduct constitutes an important step in the calculus.").  "The pertinent analysis of deterrence and culpability is objective," and "'our good-faith inquiry is confined to the objectively ascertainable question whether a reasonably well trained officer would have known that the search was illegal' in light of 'all of the circumstances.'"  Herring, 129 S. Ct. at 703 (quoting Leon, 468 U.S. at 922 n.23).

In this case, a reasonably well trained officer is not chargeable with knowledge that this search was illegal in the particular circumstances before us.  While we may no longer rely on unincorporated, unattached supporting documents to cure a constitutionally defective warrant, those documents are still relevant to our determination of whether the officers acted in good faith, because they contribute to our assessment of the officers' conduct in a particular case.  See id. at 699 ("[W]e must consider the actions of all the police officers involved.");  see also Leon, 468 U.S. at 923 & n.24 (examining the circumstances of the search to determine objective

reasonableness).  Here, the application documents were drafted, the warrant was issued, and the search of Rosa's residence was executed pursuant to a judicially authorized warrant in the three hours from 2:00 a.m. to 5:00 a.m.  The search warrant application, Investigator Blake's affidavit, and the documents incorporated by the affidavit make clear that the purpose of the search was to obtain evidence of child pornography and child molestation.  Indeed, the application and affidavit specifically requested the issuance of a warrant to seize evidence depicting Rosa's sexual exploitation of children.[3]  In addition, Investigator Blake swore to Justice Wells that based on his specialized training, he believed that the electronic items to be searched and seized were likely to reveal evidence of child pornography.  Moreover, as both the affiant and the officer in charge of executing the search warrant and later searching the

---

[3]   In this respect, we find George, 975 F.2d at 74-78, distinguishable.  We find no basis for concluding that Investigator Blake believed the warrant did not have to be limited to obtaining evidence of a particular crime; rather, both the search warrant application and supporting affidavit requested authorization to search for evidence of child pornography and child molestation and, moreover, specifically requested that the search warrant be limited to obtaining evidence of these crimes. Investigator Blake's misstep, made in the course of a time-sensitive and ongoing investigation, was in failing to notice that this limiting language (or any specific language of incorporation) was absent from the search warrant itself.  We conclude that suppressing physical evidence on the basis of such an instance of "isolated negligence" would be incompatible with the principles underlying the exclusionary rule.  See Herring, 129 S. Ct. at 700-02.

20

digital media seized, Investigator Blake was intimately familiar with the contemplated limits of the search. Finally, there is no evidence that the team of officers searched for, or seized, any items that were unrelated to the crimes for which probable cause had been shown, or that Investigator Blake somehow misled the town justice regarding the facts of the investigation and intended scope of the search.

Upon examining the circumstances of the case, we conclude that the officers acted reasonably and that the exclusionary rule would serve little deterrent purpose in this case. Given the time pressures and the content of the application and the affidavit, it is only reasonable to conclude that the failure to ensure that the items to be seized were properly limited under the express terms of the warrant was simply an inadvertent error that was the product of "isolated negligence." Herring, 129 S. Ct. at 698. There is nothing to suggest deliberateness and culpability on the officers' part. See United States v. Riccardi, 405 F.3d 852, 863-64 (10th Cir. 2005) (applying the good faith exception to an officer's search of a seized computer for evidence of child pornography despite the warrant's lack of particularity). "[E]ven assuming that the rule effectively deters some police misconduct and provides incentives for the law enforcement profession as a whole to conduct itself in accord with the Fourth Amendment, it cannot be expected, and should not

21

be applied, to deter objectively reasonable law enforcement activity." Leon, 468 U.S. at 918-19; see Herring, 129 S. Ct. at 704 ("In light of our repeated holdings that the deterrent effect of suppression must be substantial and outweigh any harm to the justice system, we conclude that when police mistakes are the result of negligence . . . rather than systemic error or reckless disregard of constitutional requirements, any marginal deterrence does not 'pay its way.'" (internal citations omitted)).

Rosa invokes Leon's language that good faith may not be found where a "warrant [is] so facially deficient–i.e., in failing to particularize the place to be searched or the things to be seized," to argue that a reasonable officer could not rely on this search warrant in good faith and that the exclusionary rule should therefore apply. He likewise relies on the Supreme Court's denial of qualified immunity to the ATF agent in Groh as further support for applying the exclusionary rule. Not every facially deficient warrant, however, will be so defective that an officer will lack a reasonable basis for relying upon it, see Otero, 563 F.3d at 1134; Riccardi, 405 F.3d at 864, and the defective warrant in this case certainly did not have the glaring deficiencies of the itemless warrant in Groh. Moreover, the Court has made clear since Leon that while the objective inquiries underlying the good faith exception and qualified immunity are the same, see Groh, 540 U.S. at 565 n.8, application

22

of the exclusionary rule requires the additional determination that the officers' conduct was "sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid by the justice system," Herring, 129 S. Ct. at 702. Because there is no evidence that Investigator Blake and his team of officers actually relied on the defective warrant, as opposed to their knowledge of the investigation and the contemplated limits of the town justice's authorization, in executing the search, the requisite levels of deliberateness and culpability justifying suppression are lacking. Cf. Groh, 540 U.S. at 569 (Kennedy, J., dissenting) ("The issue in this case is whether an officer can reasonably fail to recognize a clerical error, not whether an officer who recognizes a clerical error can reasonably conclude that a defective warrant is legally valid."); id. at 579 (Thomas, J., dissenting) ("[T]he Court does not even argue that the fact that [the agent] made a mistake in preparing the warrant was objectively unreasonable, nor could it. . . . The only remaining question is whether [his] failure to notice the defect was objectively unreasonable.").

The circumstances surrounding the investigation and application for a warrant, conducted with necessary speed in the early hours of the morning, and the search, executed by a team led by the application's affiant, demonstrate that the officers

proceeded as though the limitations contemplated by the supporting documents were present in the warrant itself, and, as a result, their actions "bear none of the hallmarks of a general search." <u>Liu</u>, 239 F.3d at 141. Under the facts of this case, we conclude that the benefits of deterrence do not outweigh the costs. In so holding, however, we reiterate the importance of law enforcement's compliance with the probable cause and particularity requirements of the Fourth Amendment and emphasize that application of the exclusionary rule will vary in accordance with the facts of each case.

**CONCLUSION**

For the forgoing reasons, we AFFIRM the district court's denial of Rosa's motion to suppress.

24