09-0636-cr
United States v. Rosa

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

_____

August Term, 2009

Argued: March 2, 2010

Decided: October 27, 2010
On Rehearing: March 8, 2011

Docket No. 09-0636-cr

_____

UNITED STATES OF AMERICA,

*Appellee*,

—v.—

EFRAIN J. ROSA,

*Defendant-Appellant*.

_____

B e f o r e :

WALKER and LIVINGSTON, *Circuit Judges*, and KAPLAN, *District Judge*.[*]

_____

KAPLAN, *District Judge*:

I respectfully dissent from the panel's denial of rehearing. Although I joined in the panel opinion,[1] the petition has persuaded me that the case should be reheard and, on rehearing,

_____

[*] The Honorable Lewis A. Kaplan, United States District Judge for the Southern District of New York, sitting by designation.

[1] *United States v. Rosa*, 626 F.3d 56 (2d Cir. 2010).

reversed. I have come to the conclusion that the panel holding is inconsistent with *Groh v. Ramirez*,[2] which is more directly on point and which *Herring v. United States*[3] did not explicitly overrule. *Groh* and *United States v. George*,[4] in my view, compel exclusion of the evidence discovered because the good faith exception to the exclusionary rule does not apply here.

In *United States v. Leon*,[5] the Supreme Court simultaneously established the good faith exception and acknowledged that in some circumstances "a warrant may be so facially deficient – *i.e.*, in failing to particularize the place to be searched or the things to be seized – that the executing officer cannot reasonably presume it to be valid."[6] Based on *Leon*, this Court held in *George* that the good faith exception did not apply because a "warrant not limited in scope to *any crime at all* is so unconstitutionally broad that no reasonably well-trained police officer could believe otherwise."[7] The Supreme Court came to a similar conclusion in *Groh*, where the warrant was insufficiently particular because it failed to identify any of the items to be seized.[8] The Court

---

[2]

540 U.S. 551 (2004).

[3]

129 S. Ct. 695 (2009).

[4]

975 F.2d 72 (2d Cir. 1992).

[5]

468 U.S. 897 (1984).

[6]

*Id.* at 919-21.

[7]

*George*, 975 F.2d at 78 (emphasis in original); *see also id.* ("[This] is the type of facially invalid warrant that could not have been relied upon in good faith because 'one who simply looked at the warrant, . . . would . . . suspect it was invalid.'").

[8]

As here, the warrant application and affidavit that had been presented to the magistrate contained the requisite specifics missing from the warrant itself, but the warrant did not incorporate those documents. *Groh*, 540 U.S. at 554.

there held that the search pursuant to that warrant violated the plaintiff's Fourth Amendment rights and that the defendant police officer was not entitled to qualified immunity[9] because "even a cursory reading of the warrant in this case – perhaps just a simple glance – would have revealed a glaring deficiency that any reasonable police officer would have known was constitutionally fatal."[10]

Five years later, *Herring* used broad language[11] in holding that the good faith exception applied in the different context of a search made pursuant to a facially valid warrant. It did not, however, purport to overrule *Groh*. *George*, *Groh*, and *Herring*, moreover, are compatible when *Herring*'s broad language is read in light of its facts.[12] The Court in *Herring* held the good faith exception applicable because (1) the officer executing the warrant acted reasonably because the warrant was facially valid, and (2) the upstream police error was the result of "isolated

---

[9]

The Court has explained that "the same standard of objective reasonableness that we applied in the context of a suppression hearing in *Leon* defines the qualified immunity accorded an officer." *Id.* at 565 n.8 (quoting *Malley v. Briggs*, 475 U.S. 335, 344 (1986)).

[10]

*Id.* at 564.

[11]

*See Herring*, 129 S. Ct. at 702 ("To trigger the exclusionary rule, police conduct must be sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid by the justice system. As laid out in our cases, the exclusionary rule serves to deter deliberate, reckless, or grossly negligent [police] conduct, or in some circumstances recurring or systemic negligence. The error in this case does not rise to that level.").

[12]

*Accord United States v. Lazar*, 604 F.3d 230, 237-38 (6th Cir. 2010) ("This case does not involve the sort of police error or misconduct present in *Herring*. Like *Groh*, it instead deals with particularization of search warrants and whether they are facially deficient. . . . *Herring* does not purport to alter that aspect of the exclusionary rule which applies to warrants that are facially deficient warrants *ab initio*.").

3

negligence [by clerical staff] attenuated from the [illegal] arrest."[13] In those circumstances, the costs of exclusion outweighed the negligible deterrent benefits.

This case is quite different. Here, as the majority acknowledges and as was true also in *Groh* and *George*, the warrant's facial invalidity was obvious. The police errors that resulted in the unconstitutional search were not attenuated from the search. They were committed by the officer who drafted and then helped execute the deficient warrant and by the other officers who assisted in executing that warrant notwithstanding its patent facial invalidity.[14] *Groh* and *George* held that exclusion is appropriate where, as here, a reasonable officer could not have presumed the warrant to have been valid.[15] Here, the deterrent benefits of exclusion – namely, encouraging police to take greater care in drafting and executing warrants – are greater and outweigh the costs.

The fact that Officer Blake played multiple roles here – he (1) drafted the application, affidavit, and warrant, (2) was present when the magistrate signed it, (3) executed the warrant along with others, and (4) subsequently performed the forensic analysis of the seized media – does not cut against this conclusion. The majority argues that this circumstance made it objectively more

---

[13] *Id.* at 698. The facially valid warrant turned out to have been recalled five months earlier, but it was still in the computer system due to a record keeping error.

[14] *See Groh*, 540 U.S. at 564 ("Moreover, because petitioner himself prepared the invalid warrant, he may not argue that he reasonably relied on the Magistrate's assurance that the warrant contained an adequate description of the things to be seized and was therefore valid.").

[15] *See Groh*, 540 U.S. at 563 ("Given that the particularity requirement is set forth in the text of the Constitution, no reasonable officer could believe that a warrant that plainly did not comply with that requirement was valid."); *George*, 975 F.2d at 78 ("[I]n light of the settled nature of the law concerning the failure for lack of particularity of warrants authorizing the search for 'evidence' limited only by reference to 'a crime,' it is the type of facially invalid warrant that could not have been relied upon in good faith . . . ." (citation omitted)).

4

reasonable for the officers to have presumed the warrant to have been valid and that it rendered the officers' conduct less culpable.[16] But the same factors were present in *Groh* and *George*, both of which held that the good faith exception was inapplicable.[17] Those cases, moreover, control here, and they involved interests not implicated in *Herring*. The particularity requirement, at issue in *Groh*, *George*, and *Rosa,* (1) insures that a magistrate rather than the searching officers' discretion limits the scope of the authorized search,[18] and (2) "assures the individual whose property is searched or seized of the lawful authority of the executing officer, his need to search, and the limits of his power to search."[19] Those interests are not sufficiently protected where courts, as the majority

---

[16]

*See Rosa*, 626 F.3d at 65 ("[A]s both the affiant and the officer in charge of executing the search warrant and later searching the digital media seized, Investigator Blake was intimately familiar with the contemplated limits of the search); *id.* at 66 ("Because there is no evidence that Investigator Blake and his team of officers actually relied on the defective warrant, as opposed to their knowledge of the investigation and the contemplated limits of the town justice's authorization, in executing the search, the requisite levels of deliberateness and culpability justifying suppression are lacking. . . . Under the facts of this case, we conclude that the benefits of deterrence do not outweigh the costs.").

[17]

*See Groh*, 540 U.S. at 555, 560, 564-65 (refusing to grant qualified immunity to petitioner officer because reasonable officer would have known that warrant was invalid, even though petitioner drafted affidavit and warrant application, presented them to magistrate along with insufficiently particular warrant, and led the team that executed the warrant, and even though the search conformed to the limitations contained in the warrant application but not incorporated into the warrant); *George*, 975 F.2d at 75 (holding good faith exception did not apply even though the officer who swore the particularized affidavit also participated in the search).

[18]

*See, e.g.*, *George*, 975 F.2d at 76 ("Absent some limitation curtailing the officers' discretion when executing the warrant, the safeguard of having a magistrate determine the scope of the search is lost.").

[19]

*Groh*, 540 U.S. at 560-61 (quoting *United States v. Chadwick*, 433 U.S. 1, 9 (1977)); *see also Maryland v. Garrison*, 480 U.S. 79, 84 (1987) ("The manifest purpose of this particularity requirement was to prevent general searches. By limiting the authorization to search . . . , the requirement ensures that the search will be carefully tailored to its justifications, and will not take on the character of the wide-ranging exploratory searches the Framers intended to prohibit.").

5

does here, allow law enforcement to enjoy the fruits of searches conducted pursuant to facially deficient warrants simply because one of the officers executing the warrant knew the proper scope of the search as stated in documents that were not incorporated into the warrant.[20] Officer Blake was not the only officer who conducted the search, and there is a significant risk in assuming, as the majority does, that the other officers did not rely on the invalid warrant rather than Blake's particular knowledge. Such a rule creates bad incentives for police conduct, encouraging the drafting of overbroad warrants.

The majority's holding is in line with the broad language of *Herring*. That is why I joined it. On reflection, however, I think that *Groh* and *George* should have controlled the outcome and that the majority puts too much weight on rhetoric in *Herring* that was not necessary to the result. Under *Groh* and *George*, the warrant here was so facially invalid that the evidence seized pursuant to it should have been excluded. I therefore respectfully dissent.

---

[20]

*See Groh*, 540 U.S. at 565 n.9 ("[T]he Fourth Amendment's particularity requirement assures the subject of the search that a magistrate has duly authorized the officer to conduct a search of limited scope. This substantive right is not protected when the officer fails to take the time to glance at the authorizing document and detect a glaring defect . . . of constitutional magnitude."); *see also id.* at 562 ("It is incumbent on the officer executing a search warrant to ensure the search is lawfully authorized and conducted."); *George*, 975 F.2d at 77 ("Reasonable reliance does not allow an officer to conduct a search with complete disregard of the warrant's validity because the 'standard of reasonableness . . . is an objective one, . . . [one that] requires officers to have a reasonable knowledge of what the law prohibits." (quoting *Leon*, 468 U.S. at 919 n.20)).